[Civ. No. 5785.   Third Appellate District.—April 3, 1937.]

RUTH LANDIS et al., Appellants, v. FIRST NATIONAL BANK OF LAMANDA PARK (a National Banking Association), Respondent.

Walter M. Campbell and Walter M. Campbell, Jr., for Appellants.

Wilton W. Webster for Respondent.

PLUMMER, J.—This cause is before us upon an appeal by the plaintiffs from a judgment of dismissal following the sustaining, without leave to amend, the defendant's demurrer to the plaintiffs' second amended complaint. Motion to file a second amended complaint was also denied.

The action is for an accounting for and on account of 137 shares of the capital stock of the defendant bank, belonging to William Wallace Flatt, now deceased, pledged by him to the Citizens Commercial Trust and Savings Bank of Pasadena, hereinafter referred to as "Citizens Bank," as collateral security for the payment of moneys borrowed by him from said bank, which stock was afterwards sold by the said bank, and purchased for the benefit of the defendant bank through the agency and activity of its president, and immediately thereafter distributed to certain subscribers therefor, at a greatly increased price per share.

The plaintiffs in this action are legatees under the last will and testament of William Wallace Flatt, deceased. A copy of the will is attached to the second amended complaint, but need not be set forth herein. The will of the deceased was probated during the year 1932. The estate, however, is not yet closed. Among the assets of the estate were the shares of stock herein just mentioned, and certain other shares of stock not material for our present consideration.

Prior to his death Flatt was a stockholder and director of defendant's bank. Earl Grimes, the president of the defendant bank, was, during all the times herein mentioned, the executor of the last will and testament of William Wallace Flatt, deceased.

On or about March 17, 1933, the Citizens Bank purported to sell 137 shares of the capital stock of the defendant bank without giving notice to anyone except Grimes and the attorney of the defendant bank. The price agreed upon for the sale of said stock was $25 per share, amounting to the sum of $3,425. One Joseph Schweikert was the ostensible purchaser, with money furnished by said Grimes under an agreement with the defendant acting through its president Grimes, that the stock should be redelivered to certain other persons according to the terms of an agreement designated as ''Exhibit B'' hereinafter set forth.

It further appears from the complaint that the officers of the defendant bank, and all parties had knowledge of the proposed transaction. A demand was made upon Grimes, and also upon the defendant, to account to the estate of the deceased for the excess value which was paid for said stock by the parties to whom the bank distributed the same.

The allegations of the complaint show that at all the times mentioned herein the president of the defendant bank was acting as the executor of the last will and testament of William Wallace Flatt, deceased, and was instrumental in the execution of the agreement which is attached to the complaint relative to the purchase of the stock in question at the most advantageous price possible, and in the distribution of the same to subscribers therefor at a greatly enhanced price.

The complaint is very lengthy, but in order to set forth the allegations therein, which seem to us to state a cause of action, it is necessary to summarize the different paragraphs contained therein, to wit: Preliminarily, the plaintiffs state that the action is begun for themselves and in behalf of all others who are legatees under the will, or heirs to the said deceased who may thereafter join as plaintiffs or defendants. Then, the following allegations:

1st. That the Lamanda Bank, the defendant, is a national banking association;

2d. That William Wallace Flatt, a resident of the county of Los Angeles, died on or about the 6th day of May, 1932, leaving a last will and testament, in which Earl Grimes was named as executor, and who thereafter qualified as the same, and at the time of the filing of the complaint was acting in that capacity;

3d. This paragraph sets forth the relationship of the plaintiffs to William Wallace Flatt, deceased, and their being

named in his last will and testament as legatees and devisees;

4th. That among the assets of the estate of said deceased were certificates representing 142 shares of the capital stock of the defendant bank, of the par value of $100 each, and that of said shares 137 had been pledged by the deceased to the Citizens Bank to secure certain promissory notes made payable to Earl Grimes, and by him transferred or endorsed to the Citizens Bank. This paragraph also refers to other stock not material to this action;

5th. This paragraph relates to the sale of other shares of stock not involved in this action;

6th. Sets forth that Earl Grimes had, prior to the death of William Wallace Flatt, been the executive vice-president of the defendant bank, and that upon the death of Flatt, Grimes was elected president of the bank, and during all the times hereinafter mentioned has been such officer, acting as such for compensation;

7th. So far as material to this action this paragraph is in the following words and figures:

"That Wilton W. Webster, Esq., was one of the attorneys of said Citizens Commercial Trust & Savings Bank of Pasadena; that at all the times herein mentioned said Webster was the attorney of said Grimes, both as executor and individually, and of said defendant, First National Bank of Lamanda Park; that on or about the 17th day of March, 1933, said Citizens Commercial Trust & Savings Bank of Pasadena, in collusion with said Grimes and other officers and agents of defendant-bank, with the aid and assistance of their said attorney, purportedly sold, without notice to anyone except said Grimes and said defendant-bank and their said attorney, said 137 shares of the capital stock of First National Bank of Lamanda Park, belonging to said estate, at private sale, at a price theretofore agreed upon among them, to-wit: for the sum of $3,425.00, to one Jos. Schweikert, as an ostensible purchaser thereof; that said Schweikert was at that time a member of the Board of Directors of said defendant First National Bank of Lamanda Park, and was then and there the agent of said Grimes and of said bank, selected and appointed by them to bid for and purchase said stock at the most advantageous price obtainable to, for, and on behalf of said bank; that a copy of his appointment as the agent of said defendant-bank for that purpose is hereto attached, made a part hereof, and marked 'B'; that he paid therefor

said sum of $3,425.00, which sum of money had immediately theretofore been without consideration advanced and delivered to him by said Grimes, for that purpose, which sum of $3,425.00 was by said Citizens Commercial Trust & Savings Bank of Pasadena, credited as follows:

"$2,500.00 on the claim for $7,538.75; and

"$925.00 on the claim for $3,538.75;

that said Schweikert received from said Citizens Commercial Trust & Savings Bank of Pasadena said certificates representing said 137 shares of the capital stock of said First National Bank of Lamanda Park, and delivered the same to one R. D. Hart, cashier of said defendant-bank; that immediately thereafter said bank, acting by and through said Grimes as president, and said Hart, as cashier, delivered said 137 shares of stock to divers and sundry persons who had, prior to said purported sale and purchase, and on or about the 16th day of March, 1933, subscribed to said bank therefor, at the price of $250.00 per share, and said defendant-bank immediately thereafter received therefor the total sum of $34,250.00 in cash, a sum exceeding the price credited to said estate by $30,825.00, which last named sum was wrongfully converted to the use of said defendant-bank and its stockholders."

Paragraph 8 is in the following words and figures:

"That plaintiffs are informed and believe, and upon such information and belief allege, that at all times herein mentioned, and particularly at the time of the purported sale and purchase and of the resale of said 137 shares of the capital stock of said First National Bank of Lamanda Park, the officers, directors and attorney of said First National Bank of Lamanda well knew, and they each had full notice and knowledge of the following fact: that said 137 shares of stock belonged to the estate of said decedent; that said Earl Grimes was at the same time the executor of said estate and a stockholder, director and president and executive officer of said bank for compensation; that said stock was being sold by said Citizens Commercial Trust & Savings Bank of Pasadena with the full knowledge, acquiescence and approval of said Grimes, at private sale, without court approval; that said Grimes was furnishing the money to said Schweikert, as the agent of said bank for the purchase thereof, with instructions to purchase the same at the most advantageous price obtainable; that said stock was being so purchased at $25.00

per share and being resold for the benefit of said bank at $250.00 per share, of which only said sum of $25.00 per share was to be credited to said estate; that said Grimes, as executor or otherwise, had made and intended to make no effort to prevent or postpone said sale, or to have said sale made by himself as executor, subject to approval of court, rather than by said Citizens Commercial Trust & Savings Bank of Pasadena, as pledgee, nor to find a purchaser thereof, other than said bank, or to have said stock bring a higher price at said sale than the amount that he and said bank had determined in advance, to-wit: $25.00 per share; that in all of said transactions the said Grimes occupied and held antagonistic positions, to-wit: (a) as executor of said estate and trustee of plaintiffs as legatees; (b) as a director and as president and executive officer of said bank; and (c) as a stockholder of said bank, interested in said purchase and furnishing the purchase price. That the officers, directors and attorney of said bank in said transaction wrongfully conspired and colluded with said Grimes and with said Citizens Commercial Trust & Savings Bank of Pasadena to acquire said stock for $3425, with the intention and purpose of immediately delivering the same to subscribers therefor, obtained in advance at a great profit to said defendant-bank and to its stockholders.''

Paragraph 9 alleges a demand upon the defendant to pay over to the estate of the deceased the excess profit alleged to have been obtained by it in the sum of $30,825;

Paragraph 10 does not appear to us to be material in support of the plaintiffs' present cause of action, nor as pleaded does it constitute any bar, being a proceeding having for its purpose the removal of Grimes as executor of the last will and testament of the deceased;

Paragraph 11 sets forth that without the recovery of the sum from the defendant bank, the estate of William Wallace Flatt is insolvent, and the legatees and devisees will receive nothing under the last will and testament of said deceased.

''Exhibit B'' heretofore referred to is in the following words and figures, to-wit:

''This Agreement, made and executed this 17th day of March, 1933, by and between The First National Bank of Lamanda Park, a corporation, as first party, and Jos Schweikert, as second party,

"Witnesseth: That Whereas, the second party proposes to acquire certain capital stock of first party now owned by the estate of William Wallace Flatt, deceased, and held in pledge by Citizens Commercial Trust & Savings Bank of Pasadena, at the most advantageous price obtainable:

"Now, Therefore, the second party, in consideration of one dollar and other good and valuable consideration, the receipt of which are hereby acknowledged, does hereby undertake and agree with the first party that in the event that he obtains any of said stock as aforesaid, he will cause the same to be resold to such persons only as the Board of Directors of said first party shall designate, and for such price as may be determined by said Board of Directors; and that any sum or sums received from such sale shall be delivered to the first party as and for voluntary contribution made by the respective purchasers of such stock, which voluntary contribution shall be added to the capital resources of said bank, and for no other purpose.

"In Witness Whereof, the first party has caused this instrument to be executed by its officers thereunto duly authorized, and the second party has hereunto set his hand, the day and year first above written.

"(Seal of First National Bank of Lamanda Park.)

"FIRST NATIONAL BANK OF LAMANDA PARK
By E. GRIMES, President
And R. D. HART, Cashier,
First Party.
JOE SCHWEIKERT,
Second party."

To this complaint the defendant interposed a general and special demurrer. As we have stated, the demurrer was sustained without leave to the plaintiffs to amend, and also that their motion for leave to file a second amended complaint was denied.

It is the contention of the respondent that the complaint does not state facts sufficient to constitute a cause of action; that it cannot be amended to state a cause of action; and that the plaintiffs had no capacity to sue. These objections do not appear to us to be well taken.

The complaint shows that all the parties had knowledge of the entire transaction, the proposition to buy the stock at the best obtainable figure; that the money was being advanced

by the president of the defendant bank; that an arrangement had been made to dispose of the stock to subscribers at a greatly increased price; that the purchase was being made at private sale without any notice thereof to others than the parties interested in the defendant bank.

In dealing with the demurrer and with the complaint as presented to us, every item well pleaded must be considered as true. This being the case, it shows that Earl Grimes not only acting as executor of the estate of William Wallace Flatt, deceased, but as president of the defendant bank and as agent of the bank, became a party to the plan to buy the stock at the most advantageous price, under an agreement by which the purchaser was obligated to distribute the stock according to the wishes and directions of the board of directors of the bank, and that it was to be distributed to certain individuals who had previously agreed to pay $250 a share, notwithstanding the purchase price was only $25 a share. This certainly calls for an explanation. We are not passing upon the good faith of what was done, but simply upon the question of whether the complaint, including "Exhibit B", shows facts which, if unexplained, would lead to the conclusion that there had been a betrayal of trust.

Section 2228 of the Civil Code reads: "In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat or adverse pressure of any kind." On the face of it there was an advantage obtained as against the estate of which Earl Grimes was the executor, and to which he occupied a trust relation.

Section 2229, *supra*, reads: "A trustee may not use or deal with the trust property for his own benefit or for any other person unconnected with the trust in any manner." Again, on the face of the complaint and "Exhibit B", it appears that the executor of the estate, Earl Grimes, did deal with trust property for the benefit of the bank of which he was president and an executive officer.

Section 2234 of the same code provides as follows: "Every violation of the provisions of the succeeding sections of this article is a fraud against the beneficiary of a trust." While the complaint does not use any number of adjectives in setting forth the cause of action, it does set forth all the acts alleged to have been taken, which shows upon its face that the parties

connected with the defendant bank were using trust property for the benefit of the bank of which they were members.

There is no allegation in the complaint that a demand was made upon Earl Grimes to prosecute this action as against the defendant bank, but the facts set forth in the complaint show beyond controversy, if true, the uselessness of any such demand. It is apparent from the allegations, accepted as true upon demurrer, that any action prosecuted by Earl Grimes as against the defendant bank of which he was president, would not and could not have been prosecuted in good faith. A restatement of the facts are not necessary to establish the foregoing statement.

As stated by the respondent, the general rule is that beneficiaries may not prosecute actions for the recovery of property belonging to the estate, and that it is the duty of the executor or personal representative to do so. This rule has its exceptions. In 23 Corpus Juris, page 1193, section 426, we find the rule thus stated: ''While the personal representative is the proper person to proceed for the recovery of assets of the estate, it is held that the beneficiary may prosecute claims where the personal representative cannot or will not act, or where the personal representative himself, by collusion with the debtor, or otherwise, obstructs the natural course which the law establishes for the transmission of the estate to the heirs.'' The latter portion of this rule apparently has been overlooked by the respondent in its citation of authorities.

Our attention has been called to the case of *Holland* v. *McCarthy*, 177 Cal. 507 [171 Pac. 421]. We may add, the *Estate of Clark*, 190 Cal. 354 [212 Pac. 622]; also, *Hall* v. *Southern Pac. Co.*, 40 Cal. App. 39 [180 Pac. 20]; likewise, the case of *Little* v. *Caldwell*, 101 Cal. 553 [36 Pac. 107, 40 Am. St. Rep. 89]. In all of those cases the exception which we note as mentioned in the excerpt which we have taken from Corpus Juris,' *supra*, is mentioned, and each case as to the exceptions must rest upon its own peculiar facts. Thus, it appears where the executor of the estate or representative of the deceased is himself one of the moving parties in removing the assets of the estate from the estate and into the hands of other parties, facts are shown which entitle the heirs or legatees to maintain an action for the recovery of such assets.

208

■ It is true that the certificates representing 137 shares of stock mentioned herein had been pledged to secure the payment of an indebtedness contracted by the deceased, yet at the same time, subject to the lien of the pledge, that property constituted part of the assets of the estate, and the executor thereof, or personal representative of the deceased, was required to act in relation thereto with the utmost good faith and instead of endeavoring to buy it, or arranging to have it bought for the benefit of the bank, of which he was president, at the best obtainable price, it was his duty to have that stock sold for the highest possible obtainable price.

Taken as true, the facts pleaded show that the act of the executor of the last will and testament of William Wallace Flatt, deceased, tended to obstruct the natural course of the administration of the estate of the deceased, and to transmit to the heirs thereof, or the legatees under the last will and testament of said deceased, the proceeds of the estate.

We do not need to cite authorities that Earl Grimes, as the executor of the last will and testament of William Wallace Flatt, deceased, occupied a trust relation in connection with the estate, and also as to all beneficiaries under the last will of said deceased.

The agreement known as ''Exhibit B'' sets forth on its face that they were dealing with certificates of stock owned by the estate of William Wallace Flatt, deceased; that after obtaining said stock at the most advantageous price, it was to be ''resold to such persons only as the Board of Directors of the first, party'' (respondent) ''shall designate, and for such price as may be determined by said Board of Directors, and that any sum or sums received for such sale shall be delivered to first party'' (respondent). The agreement then provides that such sum shall be added to the capital resources of the bank, and for no other purpose. This latter statement, of course, is surplusage, as the price for which the stock was to be resold and turned over to the bank would necessarily constitute a portion of the resources of the bank, irrespective of the language just quoted from the agreement.

In addition to the authorities we have cited showing the right of heirs or legatees to maintain the action, we may refer to 11 Ruling Case Law, page 262.

■ Again, it is alleged by the respondent that the complaint fails to show that the estate has been damaged. In so many words the complaint contains no such allegation, but

it does set forth facts showing that the certificates of stock belonging to the estate of the deceased were sold for the aggregate sum of ($3425.00), while the defendant bank received therefor the aggregate sum of $34,250. Accepted upon the demurrer as true, it is only a matter of calculation to show that the estate has been damaged in the sum of $30,324, or thereabouts. This is the dealing with the property of the estate by the president of the defendant bank, as shown by the complaint. In this connection we may very well call attention to sections 2228 to 2239 of the Civil Code relative to the duties, obligations and liabilities of trustees. According to the facts set forth in the complaint, the defendant bank stands in the same shoes with Earl Grimes in relation to the transactions concerning the trust property. Citation of authorities on the question of damages in view of the foregoing appears to us unnecessary.

It appears that the demurrer to the amended complaint was sustained without leave to amend, and the application of the plaintiffs to further amend their complaint was denied on the ground of incapacity of the plaintiffs to maintain this action. The foregoing facts and the authorities cited we think show clearly the right of the plaintiffs to maintain this action and prosecute the same to final conclusion. For this reason it seems to us unnecessary to consider whether the statement made by plaintiffs' counsel and the petition filed for leave to further amend is sufficient to show grounds for reversal.

A further objection is urged by the respondent, that the trustee being Earl Grimes in this instance, had a right to purchase the trust property. There is a line of cases holding that where the trustee acts in good faith and goes into the market openly and without any prearranged plan to purchase the trust property, and bids for the same just as others would, the sale or purchase will be upheld. The general rule, however, is that a trustee may not buy trust property for his own benefit. The rule is thus stated as a headnote to the collection of authorities on this subject found in 77 A. L. R., page 1514, to wit: "In most of the cases in which the question has been presented, it has been held that the rule which prohibits a fiduciary from purchasing at his own sale, applies also where the sale is brought about by another." In the case at bar it appears that the sale was arranged for at private sale, at which the agent

of the defendant bank was to appear and buy certificates of stock at the most advantageous price possible, using money furnished by the executor of the estate of William Wallace Flatt, deceased. It may be true that such an arrangement likewise obtained for the stock at the sale referred to the highest possible price which the pledgee could obtain therefor. That is for the court to determine upon the trial of the action. On the face of the complaint it appears to be a plan which did away entirely with competitive bidding and enabled the bank to obtain the certificates of stock at what would otherwise be called the lowest possible price, and to resell to the bank's advantage, at what is shown to be a greatly enhanced price.

Being of the opinion that the second amended complaint states a cause of action, it is unnecessary for us to go into the question as to the discretion of the trial court in permitting amendments thereto, or to further consider any of the objections urged by the respondent.

The judgment is reversed with directions to the trial court to overrule the defendant's demurrer to the amended complaint, permitting the plaintiffs, however, to file amendments thereto if so advised, and also giving the defendant such reasonable time as may appear to be proper to answer the complaint in this action.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 1, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.