[Civ. No. 1245. Fourth Appellate District.—April 25, 1933.]

In the Matter of the Estate of DELIA EILERT, Deceased. W. J. EILERT, Appellant; SECURITY FIRST NATIONAL BANK OF LOS ANGELES, Respondent.

Everts, Ewing, Wild & Everts, A. W. Carson and L. N. Barber for Appellant.

Frank Kauke for Respondent.

BARNARD, P. J.—This is an appeal from an order settling the fifth annual account of a trustee under the will of Delia Eilert, deceased. Delia Eilert died on May 29, 1923, and in accordance with her will there was distributed to the respondent, as trustee, fifty-three and four-fifths shares of the capital stock of Eilert Products Company, a corporation, the net earnings and income to be paid to the appellant, William J. Eilert, during his lifetime and, on his death, the *corpus* of the trust to go to certain remaindermen. The appellant was president of the Eilert Products Company. This corporation owned twenty-four acres of land in the city of Fresno, upon which were situated certain buildings and equipment formerly operated as a brewery and later used in the manufacture of ice-cream and soft drinks. The corporation also owned three other pieces of real property, of which one had been used for warehouse purposes and the other two had formerly been leased to others for saloon purposes.

In 1925 the twenty-four acre tract of land, with the buildings and equipment thereon, was sold for $400,000, the purchase price to be paid in installments, and in 1926 the three other properties were sold for $125,484. During the next few years the corporation distributed a large part of its assets, in the form of cash received from the sale of these real properties, through dividends to its stockholders. The respondent received during several years the proportion of the amounts thus distributed to which the shares of stock it held in trust were entitled. Each check received was marked ''dividend'' and the respondent assumed that the same represented income upon the stock held in trust. Four

annual accounts were filed by the respondent trustee showing the receipt of such sums as income and the payment of practically all of the same to the appellant as life tenant, under the provisions of the trust. An order was made by the court approving each of said four annual accounts, which orders were never appealed from and have become final.

A fifth annual account was filed on November 25, 1930, setting forth the receipt during that year of $3,998.40, derived through such dividends from the sale of real estate by the corporation, and also the receipt of $574.60 from dividends paid by the corporation from operating profits during the current year. It was further reported that the trustee had discovered that the corporation had sold its properties and was reducing them to cash, and that all the dividends theretofore received by the trustee had included a *pro rata* portion of the moneys received by the corporation from the sale of properties held by the company at the time of the creation of the trust. The report then set forth an account of the moneys coming from the proceeds of the sales of the corporation properties which had theretofore been paid to the appellant; that said amounts had theretofore been paid to the appellant under the mistaken belief that they represented income from the *corpus* of the estate, and were previously reported to the court, by reason of this mistake, as income received and paid to appellant; that since the discovery of the mistake the trustee had withheld further payments to the appellant and was retaining all amounts received from the corporation since the rendition of the last account as a part of the principal of the trust fund; and instructions and directions were asked from the court as to the duty of the trustee under the trust provisions.

The appellant filed objections to the account and report and, after evidence taken at a hearing in which all parties took part, the court found that $16,820.70 of the amounts shown to have been paid to the appellant and accounted for in the four previous accounts was, in fact, a part of the capital or *corpus* of said trust funds; that the same came from the sale of properties owned by the corporation at the time of the death of the testatrix; that the same had been delivered to the trustee by the corporation as earnings; that the same were understood by the trustee to be earnings

of the corporation and were received and disbursed as such; that the trustee had no knowledge of the source of these funds until after the receipt of the amounts reported as received in the fifth account; and that prior to the receipt of the sums accounted for in the fifth account the trustee had no information which would put it on inquiry or lead it to suspect that the so-called dividends received by it from the corporation were not paid out of earnings of the corporation, or that the same were derived from the sale of the corporation assets. After appropriate conclusions of law, the court directed the trustee to take steps and proceedings to recover from the appellant the sum of $16,820.07, to be held as a part of the capital or *corpus* of the trust when and as recovered. The court further ordered the trustee to retain all income from the trust estate then in its hands or subsequently received, to which the appellant would otherwise be entitled, and to apply the same upon the amount found to have been overpaid to appellant, until such time as that amount had been returned to the *corpus* of the trust. From this order the life tenant or beneficiary has appealed.

In effect, at least, the court ordered the trust estate's share of the proceeds from the sale of properties held by the corporation at the time of the death of the testatrix to be kept intact as a part of the *corpus* of the trust estate. This brings up the first question presented to us as to whether the appellant, as life tenant, is entitled to an alleged increase in the value of the real estate owned by the corporation, it being claimed that this real estate greatly increased in value after the death of the testatrix. It is argued that of the twenty-four acres of land upon which the business of the corporation was located, only three acres had been used in connection with the business carried on, while the rest was unused and vacant land. The statement is made in appellant's brief that this land was worth $5,000 an acre at the time of the death of the decedent and $10,000 an acre at the time the property was sold. No evidence of this latter value is pointed out and reference is apparently made to a provision in the mortgage, taken back when the land was sold, to the effect that certain specified portions of the land could be released from the mortgage upon the payment of $10,000 an acre. This by no means fixes such a value, and the entire property, consisting of land, build-

ings, equipment and stock, was sold for a lump sum of $400,000. It further appears that at the time of the death of the testatrix all of the properties of the corporation were carried on the books of the corporation at a value of $522,850.59. These properties were later sold for $525,884, leaving no such increase as that contended for. Irrespective of its amount, we think this increase became a part of the *corpus* of the trust estate.

In support of his contention that such increase must be considered as income, the appellant relies upon *Estate of Gartenlaub,* 195 Cal. 375 [197 Pac. 90, 24 A. L. R. 1]. While the court in that case recognized the general rule that a mere enhancement of the value of assets owned by a corporation belongs to the remaindermen and not to the life tenant, where shares of stock of the corporation are held in such a trust as we are here considering, it was held that the facts then under consideration brought that case within an exception to the general rule, in that the corporation there involved was solely engaged as a trading corporation in handling a certain tract of real estate, this being the only purpose of the corporation, and an increase in the value of the land sold being the only possible source of any income or profit. It is clear that the facts of the instant case do not bring it within that exception to the general rule. The corporation here involved was engaged in manufacturing and selling certain products and the real estate owned by it was held in connection with said business and incidental thereto. While all of the twenty-four acres of land were not occupied by the buildings used by the corporation in its business, the entire tract was held and sold as a unit. An analysis of the evidence fully shows that this land had been held many years and that the corporation had in no way segregated any part of its capital for the purpose of conducting a separate real estate business. The other parcels of real property were all acquired in connection with and for the purpose of promoting the real business in which the company was engaged. All of these properties were held as assets by the corporation at the time of the death of the testatrix and by the subsequent sales were merely changed into another form. The life tenant is no more entitled to any increase in their value than he would be subject to having any possible depreciation in the value thereof charged

against him. Any increase in value should accrue to the *corpus* of the estate, the life tenant presumably receiving his full benefit through the increased income therefrom. (*Estate of Canfield,* 104 Cal. App. 181 [285 Pac. 363]; *Estate of Gartenlaub,* 198 Cal. 204 [244 Pac. 348, 351, 48 A. L. R. 677].) In the last-named case, the court said: " . . . we think it may be taken to be settled law that accretions to a trust fund resulting from the increase in value of the bonds or other securities in which its *corpus* is invested, due to whatever cause, are to be regarded as part of the *corpus* of the trust and not income or profits to which the life beneficiary is entitled."

Where, as here, the trust estate consists of shares of stock in a general trading corporation which in the conduct of its business has acquired certain assets, and where such corporation is reducing these assets to cash and distributing the same to its stockholders, we think any incidental increase in the value of such assets must be considered, as between the life tenant and the remaindermen, as additions to the *corpus* of the trust estate.

 The next point raised relates to the right of the trial court to make an order to the effect that $574.60 included in this account which was admittedly income, and the subsequent income to which the appellant would otherwise be entitled, should be held by the trustee and applied toward reimbursing the trust estate for moneys theretofore erroneously paid to appellant, and directing such trustee to take steps or proceedings to collect the balance. Appellant argues that, the order·settling the four former accounts having become final, the court was without power to reopen the matters contained therein on the hearing of a subsequent account and that the effect of the order here made is to set aside the former orders and reopen the matters therein adjudicated, which may not be done. The appellant cites sections 1701 and 1699 of the Code of Civil Procedure (then in effect) and such cases as *Estate of Pratt,* 119 Cal. 156 [51 Pac. 47], *Estate of Fernandez,* 119 Cal. 579 [51 Pac. 851], *Estate of Carver,* 123 Cal. 102 [55 Pac. 770], *Estate of Bell,* 142 Cal. 97 [75 Pac. 679], and *Estate of Rider,* 199 Cal. 742 [251 Pac. 805]. The respondent, while conceding the finality of these previous orders, points out that the trial court did not attempt to disturb the former

orders and did not order the life tenant to return the money mistakenly paid or received. The court did, after hearing, find facts justifying the conclusion that a mistake had been made through which the life tenant had received certain moneys to which, in equity and good conscience, he was not entitled. Without doubt the court, in the exercise of its equitable jurisdiction, has the power, in a proper case and in a proper way, to grant relief from a final order or judgment obtained through fraud or mistake. Such relief has been frequently given in this state (*Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317, 323]; *Estate of Walker,* 160 Cal. 547 [117 Pac. 510, 511, 36 L. R. A. (N. S.) 89]; *Simonton* v. *Los Angeles Trust & Savings Bank,* 192 Cal. 651 [221 Pac. 368]; *Estate of Bloom,* 213 Cal. 575 [2 Pac. (2d) 753]). The appellant argues that no such relief is here possible because the mistake here made was intrinsic and not extrinsic. In *Bacon* v. *Bacon, supra,* the court said:

"The case at bar comes fully within these principles. The plaintiff, by reason of the common mistake, believed that her legacy was only two thousand dollars, instead of ten thousand dollars, as it was in fact. She had been fully paid the two thousand dollars, which she believed to be the extent of her demand. Her claim was, as she supposed, satisfied, and she was thereby fully justified in assuming that she had no further concern with the estate and no interest in the distribution. . . . The obvious result was the decision of the court, based on the uncontested facts set forth in the petition for distribution, that the plaintiff had been paid in full, with the corresponding decree distributing to the residuary legatees eight thousand dollars of the money of the estate which of right belonged to the plaintiff. The mistake of the plaintiff which led to this injury was clearly caused by matters extraneous and collateral to the merely formal inquiry made by the court upon the hearing."

In *Estate of Walker, supra,* the court said: "The sanctity and immunity of a decree of distribution which has become final attaches to the decree itself and not to those who under it may have derived an unconscionable advantage through fraud, accident, or mistake."

The mistake here made was "extraneous and collateral to the merely formal inquiry made by the court upon the

hearing'' and we are unable to see why it is not, under the facts found, similar in character to those for which relief has frequently been granted and of a nature fully justifying equitable relief.

The question remains, however, whether such equitable relief could be given by the court in this proceeding, or whether a separate suit in equity was essential. In most of the cases cited above, a final decree of distribution having been entered and the estate closed, a separate suit in equity was filed upon the theory that the distributees held the property distributed to them in trust for the rightful owners thereof. In the matter now before us the trust estate was still pending in the trial court. Under such circumstances, if the trial court has the requisite equitable jurisdiction, we know of neither reason nor authority for the proposition that a separate suit is essential. In *Verdier* v. *Roach*, 96 Cal. 467 [31 Pac. 554, 557], it is said: ''Our superior courts have both probate and equity jurisdiction, so that whenever, in the course of the administration and settlements of estates, our probate statutes are found to be inadequate to authorize and accomplish all that a court of equity is authorized to do in such cases, our superior courts may exercise their equity powers in connection with and as incidental to their powers in probate matters to the extent necessary to a complete administration and distribution of estates; provided, of course, that nothing be done in contravention of any statutory provision.''

Having charge of this trust estate, it was the duty of the trial court, so far as it could, to see that the *corpus* or principal thereof was kept intact for the remaindermen. A complete administration of the trust estate involved this duty as well as seeing that income payments were made to the life tenant as he became entitled to them. The superior court not only had both probate and equity jurisdiction but it had the undoubted right to exercise its equity powers in connection with and as incidental to its powers as a probate court. Having determined that this life tenant had received moneys to which he was not entitled and which belonged ultimately to the remaindermen, and having under its control at the same time other moneys to which the life tenant was entitled and also other property which could be expected to make further moneys available to him while the matter

was still in charge of the court, all of which was a part of the same matter then pending before the court, it would be contrary to all principles of equity to hold that the court must first order the income in the hands of the trustee paid to the life tenant and that a separate action must then be brought to compel him to repay this money on account of sums theretofore mistakenly paid to him from the same fund and which the court had already found he was not entitled to retain. (*Estate of Whitney*, 124 Cal. App. 109 [11 Pac. (2d) 1107].) The entire matter being before the court and all of the parties having been heard, the court had full power to complete the same and to render its order in accordance with the facts and the principles of equity involved. We think it also follows that the matter of directing the trustee to take other steps and proceedings for the purpose of recouping the loss suffered by the trust estate, is one entirely within the discretion of the trial court.

While the court found that the appellant had received $16,820.07 from the *corpus* of the estate to which he was not entitled, the respondent concedes an error in the amount named and that the correct figure, as to the amount improperly received by the appellant, is $15,360.79. The order appealed from should therefore be modified by changing the amount which the trustee is directed to take steps to recover and when recovered to return to the trust estate, from $16,820.07 to $15,360.79, of which $574.60 is now in the hands of the trustee, leaving a balance of $14,786.19 still due to the trust fund.

As so modified, the order appealed from is affirmed, the appellant to pay costs on appeal.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 22, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1933.