[Civ. No. 11344. First Appellate District, Division Two.—April 4, 1940.]

RUTH LANDIS et al., Appellants, v. EARL GRIMES et al., Respondents.

Walter M. Campbell, Jr., and Walter M. Campbell, Sr., for Appellants.

Wilton W. Webster for Respondents.

STURTEVANT, J.—In an action brought to obtain equitable relief against certain orders made in a proceeding in probate, the trial court sustained a demurrer, without leave to amend, to the plaintiffs' second amended complaint. From the judgment entered in favor of the defendants, the plaintiffs have appealed.

For some time prior to his death W. E. Flatt was a stockholder in, and president of, the First National Bank of Lamanda Park. He owned 142 shares of the 250 shares issued and outstanding. The defendant Earl Grimes was the executive vice-president of the bank. On May 6, 1932, Flatt died testate. The defendant was appointed executor of the decedent's will and the estate was administered, distributed, and the executor was discharged. The legatees and devisees of the decedent claimed the executor committed certain acts of fraud. They commenced two separate actions in equity. This one was brought against the executor and his bondsmen. The other action was brought against the bank. In the latter action the trial court sustained a demurrer to their second amended complaint but its judgment was reversed. (*Landis* v. *First Nat. Bank,* 20 Cal. App. (2d) 198 [66 Pac. (2d) 730]). Reference is made to that case for the facts which are there fully set forth. The plaintiffs assert the allegations of the complaint in the latter suit were the same as in the present one " . . . except that in this complaint certain acts of extrinsic fraud in procuring an order of the probate court approving the executor's account and report, wherein this sale by the pledgee was referred to, are alleged." The defendants do not controvert that statement but contend the two are not "companion cases". As we see the facts, the distinction is immaterial in determining the merits of this appeal.

The plaintiffs earnestly press their allegations of fraud which they had also alleged in the Landis case. The defendants in a long brief seek to belittle said acts. But it is sufficient

to state that we are not inclined to criticize or disapprove any part of the decision in *Landis* v. *First Nat. Bank, supra,* and we are not inclined to hold the plaintiffs' allegations of actionable fraud are deficient.

However, the defendants contend the complaint is fatally defective in an attempt to state a cause of action. They show the plaintiffs' complaint does not show that they have no plain, speedy and adequate remedy but it does show they have such a remedy. In that connection they call to our attention the following facts.

The decedent died May 6, 1932. In his will he named several legatees some of whom resided in California while others resided in Minnesota and Montana. On June 2, 1932, letters testamentary were issued to the defendant Earl Grimes. At the time of his death the decedent owned 142 shares of the issued and outstanding stock of the First National Bank of Lamanda Park and he had pledged 137 shares thereof to Citizens Commercial Trust and Savings Bank of Pasadena to secure two promissory notes 'in the total sum of $11,077.25 principal and interest. He had also deposited with the pledgee 200 shares of the capital stock of Montana Life Insurance Company as additional collateral. On March 16, 1933, the defendant Grimes caused the last-mentioned stock to be sold and the proceeds applied on the indebtedness of the deceased to the pledgee. At about the same time he caused his agent to buy and the pledgee to sell the said 137 shares of stock in the First National Bank for $25 per share. Said transaction was had in the name of said agent and the stock was by the First National Bank sold in parcels to purchasers found and selected by the defendant for $250 per share. The surplus so received was paid into the treasury of said bank. The pledgee accepted the $25 per share, applied the proceeds *pro rata* on the balance remaining due on the notes it held, and was given a lien on other assets of the estate for the balance remaining payable to it. The sale of the pledged stock was conducted by the pledgee as provided in the Civil Code, sections 3001 et seq. No notice thereof was given to the legatees and no order was asked for or given by the probate court before the sale was had. No legatee had notice of the transaction. On April 14, 1933, said sale was reported to the probate court. At that time the defendant Grimes filed his first current account and as a part thereof reported said sale.

On May 9, 1933, the account was approved. The legatees knew nothing about said report until January, 1934. At that time it was too late for them to appeal or to make a motion under section 473, Code of Civil Procedure. Later the defendant filed his second current account. In due time the plaintiffs filed a contest seeking to surcharge the defendant's first current account and to have the defendant removed. A demurrer was sustained to the contest and the petition for removal was denied. The record does not show whether an appeal was taken. On June 2, 1936, the defendants filed his final account and a petition for distribution. The plaintiffs filed a contest of the account and again asked the probate court to surcharge the account of said defendant Grimes. Said contest was overruled and the account was settled and the petition for distribution was granted June 22, 1936. The record does not show an appeal was taken from either order. The plaintiffs pray judgment that the order dated May 9, 1933, settling said first account current, be vacated and that they have judgment against defendant Grimes for $30,825, or so much as each legatee is entitled to receive as legatee under said will.

■ Having called to our attention the foregoing matters the defendants say: "It thus appears that, after the settlement and allowance of the first account current in which the item respecting the stock was first reported, plaintiffs have been heard by the probate court in three separate contests over the same subject-matter: First, their contest to the second account current; second, their petition to remove the executor; third, their contest to the final account. Now, these facts just summarized, in and of themselves, conclusively dispose of the contentions of the plaintiffs. They have no standing in this court, regardless of whether the complaint does or does not contain allegations sufficient in form to charge extrinsic fraud. The adverse decisions of the probate court upon their respective contests are, in full legal effect, *res adjudicata*." Those facts are alleged in the plaintiffs' second amended complaint. It is therefore clear the plaintiffs not only had a plain, speedy, and adequate remedy in the probate court, but they have exercised such remedy. Conceding, as claimed, that the order settling the first account current may not be disturbed, nevertheless the probate court had power to surcharge the later accounts and, if any portion of

the estate was being fraudulently converted, to direct the executor to recover it and account therefor in his later accounts. (*Estate of Eilert,* 131 Cal. App. 409 [21 Pac. (2d) 630] ; *Security-First Nat. Bk.* v. *Superior Court,* 1 Cal. (2d) 749, 757, 758 [37 Pac. (2d) 69].) It thus appears the plaintiffs have had their day in court. If they were not satisfied with the judgments and orders made in the probate court they had the right to appeal and we must assume they have appealed. It is obvious therefore that they may not resort to a court of equity. (*Doran* v. *Sherman,* 18 Cal. App. (2d) 479 [64 Pac. (2d) 442], and authorities there cited.)

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.