[Civ. No. 11951-S. Second Appellate District, Division One.—August 29, 1940.]

HENRY ARTHUR CHURCH et al., Minors, etc., Appellants, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association) et al., Respondents.

530

A. V. Falcone for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

DORAN, J.—This action for money, an accounting and declaratory relief, was instituted on July 22, 1937. Appellants' description of the appeal herein and the theory of plaintiffs' cause of action are as follows, quoting from appellants' briefs: "This is an appeal, from an adverse judgment, by minor plaintiffs, beneficiaries under an expressed [*sic*] trust, who sued to enforce the said trust and to recover for damages to the trust *corpus* and to recover for conversion of trust income, said suit being directed against a stranger to said trust, the defendant bank, who converted said trust income and damaged said trust *corpus,* under the circumstances hereinafter set forth. . . . Throughout its brief, and in fact throughout the. entire history of this litigation, respondent has either failed or refused to understand and acknowledge the true status of appellants in this action. *They do not sue to enforce any specific right of theirs as assignees or remaindermen.* They sue to enforce the trust for the violation thereof by the trustee, another beneficiary and a stranger. . . . Conceding that beneficiaries under trusts, in this state, *receive no estate or interest at all in the trust . . . nonetheless he may enforce the performance of the trust."* (Italics included.)

The record reveals the facts, from which the litigation herein arose, to be as follows:

One of the defendants, H. A. Church, Jr. (hereinafter referred to as Harry Church), is the father of the four minor plaintiffs, and is the husband of Lucia Luella Church, the guardian *ad litem* herein of said minor plaintiffs.

It appears from the record that on April 19, 1917, a written declaration of trust was executed by H. A. Church and Margaret Church, husband and wife, in which three of their children, namely, R. O. Church, C. M. Church and Hattie May Cottle, were named as trustees, affecting improved, income-bearing property, represented by a legal description thereof and known in the Church family as the Montebello property; a beneficial estate was thereby established for their third son, Harry Church, above mentioned, in the form of a life tenancy (defeasible earlier upon specified conditions) to the extent of the net income therefrom, payable monthly, after the payment of the expenses of upkeep, repair, insurance and all taxes and assessments levied on said property. Provision therein was made for remainders unto their chil-

dren, the original trustees. All of the aforesaid persons executed the document, which was recorded in the office of the county recorder of Los Angeles County.

On December 15, 1922, an amendment was executed to the declaration of trust, in which the life tenancy was continued and its *quantum* remained substantially the same. The remaindermen, however, were changed, that is, the named, living children of the trustors were replaced by the children of the defendant life tenant, Harry Church, which children as heretofore noted are the plaintiffs in the within action.

R. O. Church (referred to as Ralph Church), and C. M. Church (referred to as Clyde Church), two of the original trustees, testified in substance that after the original trust agreement was executed they allowed their brother, Harry, to consider the trust property as his property and to look after it, that is, to manage it and to collect the rents; that their father instructed them to allow their brother Harry to do so, but not to allow him to sell the property or to lose it.

The defendant life tenant, Harry Church, likewise testified that during the period of his father's lifetime (H. A. Church died in the year 1924, and Mrs. Church died in 1928), and until the year 1930, he entered into the active management of the trust property, and that his father must have known of this fact; that they were in the same office together.

Commencing with the year 1930, said Harry Church began to spend the major portion of his time away from Los Angeles. He arranged with a Mr. E. T. Cochrum, a friend, to assist him in the collection of the rent from the trust prop-erty.

Prior thereto, namely on September 10, 1929, said Harry Church borrowed the sum of $5,000 from the Montebello branch of the defendant bank, on a note (which debt had been paid down to $4,000 principal by March 10, 1930) ; and the sum of $3,000 was lent to Mr. Cochrum, on his note, which sum of money was turned over by Cochrum to Harry Church. Mr. Cochrum's note was recognized by said Harry Church as his obligation. In connection with the above transaction and as a part thereof, Harry Church executed a financial statement for the attention and consideration of the afore-

said bank in which he set up as his personally owned realty certain of the trust property.

Although R. O. Church and C. M. Church, the two original trustees, were vice-presidents of the defendant bank and branch managers thereof, they were not located at its head office, nor at the Montebello branch thereof.

Defendant bank, in due course, desired these obligations paid and to secure and bring about such payment, Harry Church, on March 13, 1930, executed assignments to the Montebello branch of the defendant bank, of certain leases which he, as lessor, had outstanding on portions of the trust property.

The manager of the Montebello branch of the defendant bank, William F. Johnson, testified that at the time of the assignment of the leases to the bank he had no knowledge of any trust affecting the property covered by such leases, and further, in answer to the question: ''To your knowledge, did either Clyde Church or Ralph Church have anything to do with the arrangements whereby H. A. Church, Jr., executed these assignments to pay off his obligation to the Bank?'', Mr. Johnson replied: ''Not that I know of. . . . As a matter of fact, the whole matter of paying off the loans in which we were interested in the bank, was referred to our central credit department and the arrangements for the assignment of those leases were made in our central credit office.''

Defendant Harry Church testified that in the year 1926 he had discussed with his brothers Clyde and Ralph, and also with his sister Hattie, the matter of executing the leases on the trust property, and that he was told they did not care to sign the leases but that it was satisfactory to them to have him do so; he also testified that about two or three weeks prior to March 13, 1930, on which date the leases were assigned to the bank, he had had a conversation with Ralph Church in which it was suggested by the latter that he, Harry, assign his interest in said leases to the bank and that he, Ralph Church, would ''arrange to have the Security carry'' Harry's note; that a similar conversation was had by him with Clyde Church.

Both Clyde and Ralph Church denied that they had advised Harry to assign his interest in the leases to the bank, and testified in substance that their brother Harry had told them of these assignments after said assignments were made.

It appears that after assigning the aforementioned leases Harry Church notified the tenants to pay the rent to the Montebello branch of the defendant bank; these payments were made either by the tenants directly, or through Harry Church or Mr. Cochrum, and were credited by the bank to a commercial account in Mr. Church's name.

On May 8, 1930, Harry Church and his wife, the latter being the guardian *ad litem* of the plaintiffs herein, directed the bank to pay from the rentals received certain notes of theirs to third parties ''only after your loan represented by $3,000 note of E. T. Cochrum in your favor, and also your loan represented by our $4,000 note in your favor, have been paid in full, including interest to date of payment''.

By September 13, 1932, the debts to the bank were paid off by means of said rentals, and the transaction was closed. The total sum received by it from these leases amounted to $9,363.82. From the rents turned over to it, the defendant bank made certain disbursements for repairs ordered by Harry Church.

On September 22, 1933, an action numbered 360,868, was pending in the Superior Court of Los Angeles County, in which the remaindermen under the amended declaration of trust (plaintiffs herein), were the plaintiffs, appearing by their guardian *ad litem*, W. L. Stevens, and in which the original trustees were the defendants, the gist of which action was for non-, mis-, and malfeasance of the original trustees as such. Before the filing of said action, to wit, on June 21, 1933, said life tenant, Harry Church, had executed an assignment to the remaindermen, his children, of all of his interest in the trust. The original trustees resigned as such, in said court action, and the plaintiffs' guardian *ad litem* therein, Stevens, a nominal codefendant herein, was appointed trustee in the place and stead of the original trustees. By a stipulated judgment the account of the trustees was confirmed, and they were ordered to disburse a balance of $382.60 which they then had on hand. The defendant bank was not a party to said proceeding. The judgment therein is final and has not been set aside. With the proceeding above mentioned the matter rested of record until this action was commenced on July 22, 1937.

The record reveals, as the evidence heretofore noted indicates, that immediately after the execution of the declaration of trust, Harry Church managed and controlled the trust

property, which included generally the renting, the collection of rents, repairing, and other attention to details ordinarily incident to the ownership of property, and continued in such management for approximately thirteen years. It was during such management of the aforesaid trust property that the leases heretofore mentioned were executed by Harry Church. It is noteworthy that the trustees, apparently neither assumed responsibility nor performed the duties of their office as such trustees at any time, probably due to the fact that their brother, Harry Church, being the life tenant and entitled to the net income from the estate created by the declaration of trust, was believed by them to be capable and trustworthy.

It should be noted also that the moneys that came into the possession of defendant bank and were by the bank applied on Harry Church's debt to said bank, were moneys to which, under and according to the terms of the declaration of trust, Harry Church was lawfully entitled, to the extent that the same represented the net income of the estate.

It is contended by appellants that as to the first cause of action thirteen of the enumerated findings of fact are either unsupported by the evidence or otherwise defective. As to the other four causes of action the findings are likewise assailed as well as the findings relating to the answer and affirmative defenses. Appellants' position is declared to be ''that the evidence supports all the allegations of the complaint and that therefore, unless any of the affirmative defenses are factually established by Respondent and then are sufficient in law to constitute affirmative defenses to the complaint or any part thereof, a judgment for Appellants is inevitable''. It is argued by appellants that ''Throughout these premises defendant life tenant'' (Harry Church) ''must be considered in his true light, as a trust-violating beneficiary, inimical to the trust and, *a fortiori,* so because of his natural status as the son of the trustors and the father of Appellants.''

In particular, it is urged by appellants that Harry Church was without authority to execute leases of the trust property and that such leases were void *ad initio;* that the assignment therefore of said leases to the defendant bank to secure his, Harry Church's, personal loans, conveyed no interest or rights in said property to defendant bank nor authority to act in connection therewith and that the surrender by the trustees

of their control over the trust property was wrongful and in violation of the trust. It is argued by appellants that as a result of the aforesaid acts, the defendant bank became a "constructive trustee" with relation to the trust property and that the application or the moneys received by defendant bank, as above described, to the satisfaction of Harry Church's debt was a "conversion of the trust income and an interference with and damage to the trust *corpus*". In this connection appellants rely on *England* v. *Winslow*, 196 Cal. 260 [237 Pac. 542]. There the court reaffirmed the familiar rule that "One who has assumed the relation and undertaken to act in the capacity of a trustee and who has thereby come into the possession and control of the money or property of another cannot be heard to deny the validity of the trust under which he has admittedly acted and the benefits of which he has received and holds."

Without going into further detail it is sufficient to note that the trial court found against plaintiffs and appellants on all of the issues involved.

There is no conflict in the evidence except as above noted.

The appeal is without merit, as indeed plaintiffs' purported causes of action were revealed to be, by evidence adduced at the trial.

The findings are abundantly supported by the evidence and the trial court's conclusions are correct as a matter of law.

██ The fallacy of appellants' contentions appears to result from the extravagant and exaggerated importance sought to be attached to the so-called invalid leases and the assignment thereof to defendant bank by Harry Church. It is about these acts that appellants most bitterly complain and which, in addition to the action of defendant bank in connection therewith, in effect, are regarded by appellants as perniciously evil. An impartial review of the record will not support appellants' asserted conviction in this regard.

It may be conceded that Harry Church was without authority to execute such leases and it may be further conceded that the trustees were blameworthy in the failure to give attention to the trust estate, but the record is entirely destitute of any evidence direct or indirect that points to any culpability on the part of defendant bank. To the contrary, the record reveals the defendant bank to have acted in entire good faith at all times. So far as its relation to the trust

is concerned, the defendant bank is in no different position than if the so-called invalid leases had never been executed and assigned. It is in precisely the same position that would have resulted from a resort to the identical procedure to collect the promissory note without the security. The security, that is, the so-called invalid leases, accepted by the defendant bank were accepted in good faith and without actual knowledge of the legal status of the property described therein. Even though charged with constructive knowledge, as contended by appellants, the result would be no different, for the effect of such acceptance was but an incident, trivial in its relation to the true state of affairs, that by no process of reasoning could be elevated to the dignity of controlling importance. The legal significance of such leases and their assignment, in the circumstances, is of no consequence.

The only parties to the transaction involving the settlement of Harry Church's debt to defendant bank were Harry Church and the bank. At no time did defendant bank assume the relation of or undertake to act as trustee under the trust in question. Appellants' contention to the contrary, namely, that a trust by operation of law was established and that by reason thereof defendant bank became a "constructive trustee" is not sustained by the record. In this connection, it is important to bear in mind that defendant bank was at all times dealing with the beneficiary and not with a trustee. The evidence does not reveal the familiar situation of a third party receiving trust property from a trustee. The trust property here considered was actually under the control of the beneficiary and the disposition of the income therefrom was by such beneficiary, who was not only authorized to take the same into his keeping but was entitled to keep for himself the net income thereof.

As heretofore noted, plaintiffs originally, and for a number of years, were merely remaindermen, with the life beneficial interest of the estate in their father, Harry Church. During this period, Harry Church, figuratively speaking, overdrew his account in and with the trust and contrary to the terms and limitations of the declaration of trust in the manner hereinbefore described. Manifestly, such acts on the part of Harry Church gave rise to no cause of action in his favor against defendant bank. The transaction between Harry Church and defendant bank, as above noted, was closed September 13, 1932. Nine months later, viz.: June 21, 1933,

Harry Church assigned all of his rights, titles, interests, claims and demands in the trust to the remaindermen, his children, the plaintiffs herein. Four years later, namely, on July 22, 1937, the action herein was commenced.

■ Appellants also argue as follows: "Appellants do not sue as assignees of the defendant life tenant. They sue as beneficiaries under the trust in the default of the original trustees and the new trustee," citing Civil Code, section 863. The argument is untenable, for in what capacity the appellants sue is beside the issues here involved. As pointed out by respondents, if the trust estate disbursed more for the benefit of Harry Church than he was legitimately entitled to, then the trustees had authority to withhold payments to him from the net income of the estate until such time as the estate had been reimbursed in an amount equal to the excessive payments. Such procedure was approved by the court in *Estate of Eilert,* 131 Cal. App. 409 [21 Pac. (2d) 630], and, as pointed out by respondents, if the new trustee has neglected to restore the estate during the period from September 13, 1932, to July 22, 1937, with funds the evidence shows to have been available, such neglect is no fault of defendant bank. ■ Moreover, assuming, but not deciding, that the life beneficial interest in the estate was assignable and that by reason of the assignment the remaindermen become direct as well as contingent beneficiaries, nevertheless, the plaintiffs acquire no added advantage thereby, for the test as to defendant bank's liability in the circumstances is not the legal status that plaintiffs bear with relation to the trust estate but the relation defendant bank bore to the trust estate at the time its acts or omissions assertedly constituted a conversion of the trust income. In that regard, as above noted, in substance and effect the evidence established no relation between defendant bank and the trust estate at any time, either directly or by operation of law.

It is unnecessary to give consideration to the several additional defenses relied upon by respondents. There are no prejudicial errors in the record and for the foregoing reasons the judgment appealed from is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1940.