[Civ. No. 21978. Second Dist., Div. Two. Apr. 4, 1957.]

Estate of ELLEN M. HILL, Deceased. JESSIE E. HILL, Appellant, v. C. WALTER HALL et al., Respondents.

Snow & Snow and Hugh John Snow for Appellant.

Birger Tinglof for Respondents.

MOORE, P. J.—John G. Hill was executor and trustee under the will of Ellen M. Hill. He died and appellant herein became executrix of his estate. As such executrix, she filed the 14th account current and report on behalf of the deceased trustee, covering the period between the 13th annual account filed by him and the date of his death. In it, for the first time since the establishment of the trust, she allocated probate income accruing during the probate of the estate of Ellen M. Hill, to the income account of the trust. She appeals from order disallowing such allocation.

Ellen M. Hill died in 1939 leaving a will in which she named her husband executor and trustee of a testamentary trust in which he was the principal income beneficiary during his lifetime.

August 8, 1941, John G. Hill as executor filed his first and final account, report and petition for distribution. That document made no reference to the allocation or distribution of the probate income to the income beneficiaries designated by the will. As trustee he made an annual report for each of the following years, a total of 13 annual accounts and reports. During his lifetime, although he was entitled to receive 90 per cent of the income of the trust, he made no claim for the probate income except in his sixth annual account, and did not ask the court to distribute any part of it to the income beneficiaries. The court made the distribution without allocation.

With that history in mind, it now devolves upon the court to attempt to correct the evils resulting from the unselfish neglect of Mr. Hill as trustee.

On August 26, 1941, he filed his supplementary account as executor. His final and supplemental accounts and petition for distribution made no specific reference to probate income, nor did the decree. The decree of distribution dated August 27, 1941, distributed all the assets of the estate to John G. Hill, trustee, "in pursuance of and according to the provisions of the last will of said deceased." While, by the terms of the will, John G. Hill was life beneficiary to the extent of 90 per cent of the trust income, the balance thereof belonged to certain charities and should have been paid to them regularly by

the trustee as provided by the will, including their shares of the income accrued during the period of probate.

When Mr. Hill as trustee filed his sixth account current and report, May 21, 1947, it contained the first request for instructions as to how the probate income should be allocated for accounting purposes. It recited that Hill had learned during the accounting period that in his first and final account in the probate estate he had erroneously charged certain items of expense to probate income which should have been charged to principal, namely: federal estate tax, state inheritance tax, attorney's and executor's fees. The document states: "Due to the erroneous method of rendering the two accounts there should have been income distributable to the trustee, herein, of $17,041.27, as detailed above. Instead, your petitioner as Executor, distributed no income to your petitioner as Trustee, but made the payments listed above out of the income account." This statement was followed by a request for instructions as to proper disposition to be made of the probate income. This was a beginning to undo the wrongs that had accumulated since the first account was filed. But it met with opposition. As remainderman under the trust, Mrs. Adams, a respondent herein, filed an answer in which she argued that the court was without jurisdiction to hear the petition and requested its dismissal. Thereafter on January 8, 1948, according to the minutes, the petition was denied "for lack of jurisdiction." Despite the denial for lack of jurisdiction, when the formal order was filed it contained no mention of the petition for instruction or of the probate income, but settled the report and account as rendered.

John G. Hill departed this life November 19, 1954. He was succeeded in office as trustee by respondent C. Walter Hall. His second wife, Jessie Elder Hill, as his executrix, promptly filed her 14th account current and report on behalf of the deceased trustee to the date of his death. In that report, the probate income was allocated to the income beneficiaries. The two objectors, respondents Hall and Adams, took deadly aim at the 14th account current and effectively crippled the trust.

It is well to remember that by the trust, at the death of John G. Hill, the major income of the trust estate goes to respondent, Gladys Hill Adams, until the trust terminates in 1960 when the corpus is to be distributed to Adams and her issue and to the charities named in the will. Pursuant to such provision, Mrs. Adams is now the principal income

beneficiary. That lady, as remainderman of the trust, and C. Walter Hall, as successor trustee, both filed separate objections. Their chief criticism of the 14th account current was directed to the fact that the executrix had allocated the probate income to the income beneficiaries while Mr. Hall, as successor trustee, filed his 14th account current covering the same period as that covered by Jessie's account in which there was no allocation of probate income. Jessie, in turn, filed objections to Hall's account for failure to allocate probate income to income beneficiaries.

Upon such accounts and objections the matter came on for trial. The court found (1) that "by the order settling the final account and decree of distribution under will, signed and filed in this proceeding, August 27, 1941, the court intended to allocate to principal, capital, or corpus and not to income, the entire property distributed to the trustee"; (2) that Hill never appealed from this order and never claimed any allocation of the probate income to an income account until the filing of the trustee's sixth account current; and that in the order settling the sixth account current Hill "was not granted any relief on said request and prayer for allocation and no appeal was ever taken."

The court thereupon concluded, omitting irrelevant portions as follows:

"12. That the Order Settling Final Account and Decree of Distribution Under Will signed and filed in this proceeding on August 27, 1941, became final and is res adjudicata as to the rights of all beneficiaries under said Order and Trust.

"13. That the relief sought by . . . Hill in said Sixth Account Current with reference to the allocation of the probate income . . . is substantially the same relief as is sought by the Executrix of his estate in the present proceeding; that the Order . . . denied relief . . . that said Order is now final and is res adjudicata" as to Hill and his estate; that Hill acquiesced in the ruling on said order and his estate "is now precluded from claiming a distribution of probate income to an income account and charging same to capital or corpus.

"14. That in hearing said Sixth Account . . . the Court intended to and did pass upon the petition" for instructions and considered that the matter had been adjudicated in the Decree of Distribution and was therefore res adjudicata and that it lacked jurisdiction to again determine the question. The trial court further concluded that the order settling the

sixth account should be amended *nunc pro tunc* specifically to state that the decree of distribution was res adjudicata.

This appeal is from the *nunc pro tunc* order and all other orders in connection with the 14th account current which hold there has been an adjudication of the question and which deny the allocation of the probate income to the income account of the trust.

Appellant contends that there has been no adjudication of the question of allocation of the probate income; that the court erred in making the *nunc pro tunc* order and that unless the will declares to the contrary, income goes to the income beneficiaries from the date of death and not from the date of distribution to the trustee, citing *Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825]. On the other hand, respondents assert that the matter is completely res judicata and that the estate of Hill is precluded from enforcing any right to probate income because of acquiescence, laches and estoppel.

The decree of distribution did not determine the issue. The decree should not do so, for the allocation is to be made by the trustee, not the executor, even though they be the same person. (*Estate of Dare,* 196 Cal. 29, 35 [235 P. 725].) The order settling the sixth account current did not determine the question. There is nothing in the record to justify the *nunc pro tunc* order. It amounts to pure speculation as to what the judge who presided at the hearing intended to do. (See *Mather* v. *Mather,* 22 Cal.2d 713, 719 [140 P.2d 808].) ▮ Moreover, a good plea of res judicata does not raise a jurisdictional problem. (*Baird* v. *Superior Court,* 204 Cal. 408, 412 [268 P. 640]; 29 Cal.Jur.2d, § 275, p. 256.) ▮ Even if there had been acquiescence on the part of Hill, the original trustee, it would not be binding on the subsequent income beneficiaries or the charities or on the remaindermen. ▮ Inasmuch as the will does not provide to the contrary, the rule in *Estate of Platt, supra,* must be followed and the instant order must be corrected so that the income beneficiaries may be awarded the income derived during the period of probate. The decree of distribution did not make an allocation between the corpus and the income. It merely distributed the probate income and other property to the trustee as an aggregate. Thereupon the trustee became obligated to make the appropriate allocation. (*Estate of Dare, supra,* 196 Cal. 29, 36; *Estate of Marré,* 18 Cal.2d 184, 190 [114 P.2d 586].) ▮ All the accounts of the trustee, except the sixth, treated the probate income as corpus and made no distribution to

anyone. The contention that the orders settling those accounts are res judicata finds no support in law. ▊ So to contend raises an issue between the income beneficiaries on the one hand and the remaindermen on the other which is not present upon a trustee's accounting. (*Estate of Charters,* 46 Cal.2d 227, 236 [293 P.2d 778]; *Estate of Roberts,* 27 Cal.2d 70, 79 [162 P.2d 461]; *Church* v. *Security-First Nat. Bank,* 40 Cal.App.2d 529, 538 [105 P.2d 148]; *Landis* v. *Grimes,* 38 Cal.App.2d 324, 327 [100 P.2d 1089]; *Estate of Blake,* 157 Cal. 448, 456 [108 P. 287].) ▊ "The whole purpose of the proceeding is to fix the amount for which the trustee, or personal representative of a decedent, is individually liable. If the trustee, or personal representative, has acted in an unauthorized manner and by reason thereof is liable in a greater sum than that for which he charges himself, his account will be surcharged." (*Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705, 713 [134 P.2d 800].) *Estate of Eilert,* 131 Cal.App. 409 [21 P.2d 630], is apposite. Four annual accounts of a testamentary trustee had been settled, thus approving payment to the income beneficiary of certain dividends upon corporate stocks in the mistaken belief that they constituted trust income in their entirety. After discovery of the fact that the dividends should have been apportioned because they partially represented capital, the trustee, upon its fifth accounting averred its mistake and sought instructions; the court found a bona fide mistake on the part of the trustee; held that $16,820.70 had been improperly paid to the life tenant but approved by the prior orders settling accounts; directed the trustee to commence proceedings to recover such sum and to hold it as corpus when received. At the same time the court ordered the trustee to retain all trust income received and apply it toward repayment of the amounts mistakenly disbursed to the life tenant until the entire excess should be recouped. In affirming the order which thus settled the fifth account, the court said at page 414: "Appellant argues that, the order settling the four former accounts having become final, the court was without power to reopen the matters contained therein on the hearing of a subsequent account and that the effect of the order here made is to set aside the former orders and reopen the matters therein adjudicated, which may not be done." And at page 416: "Having charge of this trust estate, it was the duty of the trial court, so far as it could, to see that the *corpus* or principal thereof was kept intact for the remaindermen. A complete

administration of the trust estate involved this duty as well as seeing that income payments were made to the life tenant as he became entitled to them. The superior court not only had both probate and equity jurisdiction but it had the undoubted right to exercise its equity powers in connection with and as incidental to its powers as a probate court. Having determined that this life tenant had received moneys to which he was not entitled and which belonged ultimately to the remaindermen, and having under its control at the same time other moneys to which the life tenant was entitled and also other property which could be expected to make further moneys available to him while the matter was still in charge of the court, all of which was a part of the same matter then pending before the court, it would be contrary to all principles of equity to hold that the court must first order the income in the hands of the trustee paid to the life tenant and that a separate action must then be brought to compel him to repay this money on account of sums theretofore mistakenly paid to him from the same fund and which the court had already found he was not entitled to retain. (*Estate of Whitney*, 124 Cal.App. 109 [11 P.2d 1107].) The entire matter being before the court and all of the parties having been heard, the court had full power to complete the same and to render its order in accordance with the facts and the principles of equity involved.''

In principle, the *Estate of Eilert, supra,* controls here. The power of the probate court to correct the mistake regardless of the settlement of the prior accounts was upheld to the fullest extent possible under the existing circumstances. The trustee was additionally authorized to pursue the recipient in a court of law for recovery of the funds mistakenly paid to him though the payment had been approved by court order. ██ That such is the correct rule is emphasized by Scott on Trusts wherein it is declared that when a trustee has paid to one beneficiary what should have been held for or paid to other beneficiaries, the latter should receive the amount of the overpayment. This can be accomplished by compelling him who has been overpaid either personally to repay the amount of the overpayment or by requiring the trustee to withhold the amount from the share of the beneficiary who was overpaid unless the beneficiary has so changed his position that it would be inequitable to compel him thus to make restitution. (2 Scott on Trusts, § 254.2, p. 1443.) If such were not the practice, a beneficiary who has been overpaid would be un-

justly enriched at the expense of those who have not been overpaid and who were not in any way responsible for the overpayment. In the instant case, there has been no payment and the problem is merely one of adjusting the trustee's accounts and then making appropriate disbursement of the accumulated fund.

At the time the sixth account was presented, the trustee requested instructions concerning proper allocation of the probate income. Following objections, counsel agreed upon the names of two cotrustees and the petition for instructions was denied, as recorded in the minutes, for want of jurisdiction. The same minute order says, "Account Settled as Prayed." This was a clear segregation of issues, removing that of apportionment of probate income from the proceeding. There was no express or implied direction for an attorney order. The fact that the later written order of the judge made no mention of the petition for instructions on the matter of apportionment is not controlling. The minutes import absolute verity. (*Shellhaas* v. *Petrolane, Ltd.*, 98 Cal. App.2d 171, 174 [219 P.2d 797]; *People* v. *Fude*, 117 Cal. App.2d 186, 189 [255 P.2d 23].) This amounted to a withdrawal of the issue or a refusal of the court to pass upon it. In either event, the order is not res judicata on that issue. (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 141 [231 P.2d 6, 21 A.L.R.2d 1387]; 29 Cal.Jur.2d § 245, p. 207.

From what we have said, it follows that the trial court erred in finding that the decree of distribution was res judicata as to allocation of probate income; that such court erred in finding it had no jurisdiction to consider the petition for instructions in connection with the trustee's sixth account current; that the trial court compounded this error in the order *nunc pro tunc*; and that the trial court erred in disallowing appellant's attempt to correct these previous errors by allocating the probate income to the income account of the trust in her 14th current account of the deceased trustee.

"The Findings of Fact, Conclusions of Law . . . Petitions For Fees, Petition for Distribution of Income, Objections, etc." are not appealable; hence the appeals therefrom are dismissed. The order settling fourteenth account is appealable. That portion of said order which purports to amend *nunc pro tunc* the order settling sixth account current of the trustee is reversed. Those portions of the order settling fourteenth account current which allocate the probate

income to the corpus account of the trust are reversed, i.e.: paragraphs IX, X, XI, XII and XV, and the cause remanded to the lower court for further proceedings consistent with the views herein expressed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied April 26, 1957, and the petition of respondent Gladys Hill Adams for a hearing by the Supreme Court was denied May 29, 1957.