54 Cal.2d 39 (1960)
Estate of ELLEN M. HILL, Deceased. C. WALTER HALL, as Successor Trustee, etc., et al., Objectors and Appellants,
v.
ANN MARIE MERCER, as Executrix, etc., Defendant and Appellant.
L. A. No. 25176. 
Supreme Court of California. In Bank. 
Apr. 22, 1960.
 Henry O. Wackerbarth for Objectors and Appellants.
 Snow & Snow and Hugh John Snow for Defendant and Appellant.
 SCHAUER, J.
 C. Walter Hall, a successor trustee, and Clarellen Adams Weir, a beneficiary of a testamentary trust created by the will of Ellen M. Hill, deceased, appeal from an order resettling two fourteenth accounts, amendments, and *41 objections thereto. Ann Marie Mercer [fn. 1] as executrix of the will of John G. Hill, deceased, an income beneficiary of the trust, has also appealed from a portion of the same order.
 On a prior appeal in this matter the trial court's decision that the income beneficiaries of the trust (John G. Hill and certain charities) had waived their right to claim income earned during probate administration of the Ellen M. Hill estate was reversed. (Estate of Hill (1957), 149 Cal.App.2d 779 [309 P.2d 39].) Contentions on the present appeals are that the trial court, following the rehearing, erred in charging certain real estate taxes against corpus rather than against probate income, and also erred in its computation of the interest due to the trust beneficiaries on the detained probate income. We have concluded that the order appealed from should be affirmed insofar as it allocates taxes and computes net probate income, but reversed for redetermination of interest accrued on such income.
 Ellen M. Hill died in November, 1939, and her husband, John G. Hill, was appointed executor. In August, 1941, the estate was distributed to John G. Hill, as trustee of a trust created by his wife's will. [fn. 2] Hill, as trustee, filed 13 annual accounts, with the thirteenth being for the year 1953. On November 19, 1954, Hill died, and was succeeded by C. Walter Hall as trustee. In February, 1955, Hill's executrix filed a fourteenth account current and report of trustee (and an amendment thereto), in which she asked the probate court to determine the income received during the probate administration of the Ellen M. Hill estate and to allocate 90 per cent of such income to the estate of John G. Hill and the balance to the charities which were trust beneficiaries. C. Walter Hall, the successor trustee, filed objections to the fourteenth account just mentioned, contending that John G. Hill (i.e., *42 his estate) was not entitled to the probate income. Hall also filed a fourteenth account of trustee, to which Hill's executrix filed objections.
 Following the decision on the former appeal (Estate of Hill (1957), supra, 149 Cal.App.2d 779), the probate court held another hearing on the two fourteenth accounts, amendments, and objections, and thereafter filed its findings of fact, conclusions of law, and order determining the amount of probate income and allocating 90 per cent thereof to the estate of John G. Hill and 10 per cent to the charities. The court also allowed the distributees interest on such probate income at the rate of 7 per cent to September 12, 1941, and at the rate of 4 per cent from September 13, 1941, [fn. 3] until paid.
 Computation of Probate Income
 The assets of the probate estate included a store building in Long Beach, income property on Slauson Avenue in Los Angeles, the residence of the decedent, and a vacant lot in Pacific Palisades.
 During the probate administration (i.e., from November 16, 1939, to August 27, 1941, on which date the executor distributed the estate assets to the trustee), the executor (Hill) received rentals from the Long Beach and Slauson Avenue properties in the gross amount of $39,442.90. The trial court determined that the operating expenses chargeable against this income were $15,244.18, thus leaving a net probate income of $24,198.72. Appellants Hall (successor trustee) and Weir (an income beneficiary after the death of John G. Hill) contend, however, that the further sum of $4,976.56, which was paid as taxes on certain of the real property during probate and which the trial court charged against the corpus of the estate, should instead have also been charged against the probate income. These taxes paid by the executor and totaling $4,976.56 are itemized as follows:
 (a, b) $742.15 as the second instalment of Long Beach city taxes, and $3,200 as the second instalment of county taxes, on the Long Beach property for the fiscal year 1939-1940. *43
 (c) $57.23 as the second instalment of taxes on the Pacific Palisades lot and $300 on the residence for the fiscal year 1939-1940.
 (d) $57.23 on the Pacific Palisades lot and $319.70 on the residence as the first instalment of taxes for the fiscal year 1940-1941.
 (e) $300.25 as the second instalment of taxes on the residence for the fiscal year 1940-1941.
 The reasons assigned by the probate court for its refusal to charge the taxes against the probate income are that:
 (1) As to items (a, b) and (c), the taxes were liens on the respective properties at the date of death of Ellen M. Hill, and as to item (c) for the further reason that the property was not productive of income.
 (2) As to items (d) and (e), the properties were not income producing.
 Ellen M. Hill died on November 16, 1939. At that time real property taxes for the year 1939-1940 had been assessed and had become a lien upon the property (Rev. & Tax. Code, 2192), and the first instalment thereof had been paid. The second instalment (totaling $3,942.15) levied against the income producing property for that tax year is the chief item here in dispute.
 [1] Generally speaking, regularly recurring taxes assessed against any portion of the corpus are payable out of income. (Rest., Trusts, 233(e); see Civ. Code, 730.15.) However, taxes assessed prior to death should usually be paid from corpus. (4 Bogert on Trusts, 804; 3 Scott on Trusts, 2d ed., p. 1850, 237; see also Estate of Jacks (1947), 80 Cal.App.2d 562, 571-572 [3] [182 P.2d 605].) [2] The taxes here involved (second instalment for 1939-1940) had become a fixed and final obligation prior to the date of death, and should be treated like any other instalment obligation incurred during the lifetime of the decedent, and paid out of assets which he then owns.
 [3] Supporting this view is the fact that the inter vivos character of real property taxes is recognized in the California inheritance tax laws, which permit deductions against appraised value for the amount of taxes which are a lien at the date of death. (Rev. & Tax. Code, 13987.) Estate of Jacks (1947), supra, 80 Cal.App.2d 562, 571-572 [3], relied upon by appellants, involved taxes assessed for a fiscal year *44 commencing after the date of death, and does not support their position here.
 [4] With respect to the taxes on the Pacific Palisades vacant lot (totaling $114.46), not only had one half of these taxes become a lien prior to death, but the lot produced no income whatever, was sold during probate administration, and never itself reached the hands of the trustee. Neither the trustee nor any of the income beneficiaries received any benefit whatever from the lot as such and no reason appears why taxes paid on it should be charged against them. In Restatement, Trusts, section 233 (m), it is stated that "taxes ... on unproductive land are payable out of principal, even though the trust estate includes other property from which an income is derived, unless it is otherwise provided by the terms of the trust." This principle appears eminently fair in the present case, where the principal received all of the proceeds of sale of the vacant lot. The trial court correctly charged this tax item against corpus.
 The above discussed rules also apply to the taxes (totaling $919.95) paid on decedent's residence. Not only had a portion of these taxes become a lien prior to death, but the home was likewise nonproductive of income. It was also sold and there is no showing that any portion of the proceeds was allocated to the income beneficiaries. Since such proceeds were received by the corpus of the trust, the court correctly charged the corpus with the taxes.
 [5] Appellants suggest, further, that because the decree of distribution, which incorporates the trust provision in the will, authorizes the trustee, among other things, to pay in his discretion all taxes, etc., "From the gross income received or derived from the trust estate or from the principal thereof ..." (italics added), and because the taxes were actually paid out of probate income, such discretion was exercised and cannot be interfered with by the courts. The taxes were not, however, paid by the trustee or from income received or derived from the trust estate. Rather, they were paid by the executor during the course of probate administration and before distribution to the trustee. The fact that the same person acted as both executor and trustee does not affect the capacity in which his acts were done. (See Estate of Dare (1925), 196 Cal. 29, 35 [1] [235 P. 725]; Estate of Hill (1957), supra, 149 Cal.App.2d 779, 784 [1].) Appellants' contentions on this point are without merit. *45
 Interest on the Probate Income
 [6] As stated hereinabove, the trial court allowed the distributees of the probate income interest thereon at the rate of 7 per cent to September 12, 1941, and at the rate of 4 per cent from September 13, 1941 (effective date of the 1941 amendment to section 162 of the Probate Code), [fn. 4] until paid. Respondent Mercer as executrix (Estate of John G. Hill) has confessed error with respect to the allowance of interest on the probate income prior to the death (on November 19, 1954) of John G. Hill for the reason that until that time Hill had received his share of the earnings produced by the invested probate income and was not entitled to a second recovery by way of interest for the same period. This view is correct, and applies likewise to the award of interest to the other income beneficiaries, which appellants have challenged. (Estate of de Laveaga (1958), 50 Cal.2d 480, 489 [14-16] [326 P.2d 129].)
 [7] As cross-appellant, however, Hill's executrix contends that the trial court erred in applying the 4 per cent interest rate provided for by the 1941 amendment to section 162 of the Probate Code, [fn. 4] rather than allowing the general 7 per cent rate stated in section 22 of article XX of the California Constitution.
 As appears from Estate of Platt (1942), 21 Cal.2d 343, 346-350 [1] [131 P.2d 825], until the opinion in that case expressly pointed out that under the provisions of section 160 of the Probate Code, but subject to the testator's express intention (Prob. Code, 163), the income of a testamentary trust accrues from the date of the testator's death, the majority of California cases had held that, unless the testamentary trust was created for the support or maintenance of the beneficiary, the income accrues from the date of distribution. The factor which apparently was controlling in such cases--inability of the beneficiary to compel payment of any income prior to distribution of trust property to the trustees--was declared in the Platt case (p. 347) not determinative of the question, because the rule precluding a beneficiary from suing to recover income during the administration period relates only to the time at which the trustees may be compelled to make payment, and does not determine the date at which the right to income commences. (See also Estate of Schiffmann *46 (1948), 86 Cal.App.2d 638, 643 [1] [195 P.2d 484].) It thus appears that as contended by Hall, the successor trustee in the present case, the right of a trust income beneficiary to receive the probate income is statutory and would be nonexistent in California in the absence of the statute. (See also Dunne v. Mastick (1875), 50 Cal. 244, 247.) Any right to claim interest on detained probate income is likewise governed, and limited, by statute, i.e., by section 162 of the Probate Code. (Estate of Platt (1942), supra, 21 Cal.2d 343, 350 [2].) It follows that any statutory limitation of the applicable interest rate is likewise controlling.
 When section 162 of the Probate Code (formerly Civ. Code, 1368 and 1369) was adopted in 1931, and at the time of death of the testatrix herein, it read as follows: "Legacies are due and deliverable one year after the testator's death, and bear interest from that time, except that legacies for maintenance, or to the testator's widow, bear interest from the testator's death. Annuities commence at the testator's death." (Stats. 1931, p. 595.) As shown in the margin, [fn. 5] the section was amended effective September 13, 1941, to specify an interest rate of 4 per cent, but was not changed otherwise.
 The section was again amended in 1953 (the year prior to the death of John G. Hill), so that the provision applicable to trust income now states as follows: "Whenever an annuitant, legatee of a legacy for maintenance or beneficiary of a trust may be entitled to periodic payments or trust income commencing at the testator's death, he shall be entitled to interest at 4 per cent per annum on the amount of any unpaid accumulations of such payments or income held by the executor or administrator on each anniversary of the decedent's death, computed from the date of such anniversary." (Italics added.) [8] Thus, after the 1953 amendment the payment of interest on probate income was not limited to "legacies for maintenance, or to the testator's widow," as was the situation when Estate of Platt (1942), supra, 21 Cal.2d 343, 350 [2], was decided, but instead extended to all trust income beneficiaries.
 [9] Cross-appellant contends, however, that because section 162 as amended in 1953 speaks only of income held by the executor or administrator in fixing a 4 per cent interest rate, it does not limit the interest to that rate where, as here, the detained income is held by the trustee. There is no merit in *47 this contention. It is probate income which is here involved, rather than trust earnings after distribution to the trustee. As shown hereinabove, both the right to probate income and the right to interest thereon are statutory, and limited by the statutes. Carried to its logical extreme, the argument of cross- appellant would mean that under the language of the statute such interest would accrue only during the time that probate income remained in the hands of the executor or administrator and would terminate upon distribution to the trustee--a result which not even the trustee here urges. That such termination of interest accrual was not the intention of the Legislature in so amending section 162 in 1953 is indicated by the further fact that probate income earned by trust property is payable by the executor to the trustee upon distribution, regardless of who may be entitled to receive the income from the trustee. (See Estate of de Laveaga, (1958), supra, 50 Cal.2d 480, 486 [3]; Estate of Hill (1957), supra, 149 Cal.App.2d 779, 784 [4].) In the circumstances we are not disposed to attribute to the Legislature an intention that interest on probate income should accrue during probate administration--a period when those entitled to receive the income are unable to compel its payment to them (Estate of Platt (1942), supra, 21 Cal.2d 343, 346-347 [1])--but should cease when, upon distribution to the trustee, the beneficiaries may enforce payment. Rather, we believe, the legislative intent is that, as was done in Estate of de Laveaga (1958), supra, 50 Cal.2d 480, 483, note 1, the 4 per cent interest rate be applied from the date of the 1941 amendment to section 162, until actual payment of the probate income to the beneficiaries.
 In summary, the income beneficiaries are entitled either to receive interest upon the net probate income ($24,198.72), at the rate of 4 per cent per annum from the date of the death of John G. Hill (November 19, 1954), until paid, less the amounts, if any, paid such beneficiaries from the earnings upon such sum, or to retain earnings already paid them if such payments should exceed the interest. The income beneficiaries are entitled to retain any such earnings paid to them whether or not such payments amount to more than the 4 per cent interest rate, but they "may not have double recovery (two compensations) for one detention of one sum." (Estate of de Laveaga (1958), supra, 50 Cal.2d 480, 489 [16].) *48
 The portion of the order appealed from which allocates taxes and adjudicates that the net probate income is $24,198.72 is affirmed. The portion of the order that determines the date from which interest on such income commences is reversed and the cause is remanded to the trial court with directions to take such further proceedings as may be necessary or expedient to enable it to recompute the interest in a manner not inconsistent with the views hereinabove expressed and, having had such proceedings, to thereupon make the computation and enter its order accordingly. Each party shall bear his own costs on appeal.
 Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J. pro tem., [fn. *] concurred.
NOTES
[fn. 1] 1. Jessie Elder Hill, who was the original executrix of the will of John G. Hill, died pending determination of this matter, and has been succeeded by Ann Marie Mercer as such executrix.
[fn. 2] 2. The Ellen M. Hill will provided for a trust to continue until the year 1960 or until the deaths of all the income beneficiaries other than the charities. The income during the trust was to be paid (1) 10 per cent to the University of Southern California, Methodist Hospital in Los Angeles and the Methodist Episcopal Church, and (2) the remainder (90%) to John G. Hill during his lifetime, and thereafter to Gladys Hill Adams (daughter of Ellen M. Hill) and Clarellen Adams Weir. Upon the termination of the trust, the trust assets should go (a) 1/8 to the University of Southern California, Methodist Episcopal Church, Methodist Hospital in Los Angeles, California, or Omaha, Nebraska, and (b) 7/8 to Gladys Hill Adams, Clarellen Adams Weir and her issue.
[fn. 3] 3. This is the effective date of amendment of section 162 of the Probate Code to read as follows: "Legacies are due and deliverable one year after the testator's death, and bear interest from that time on and after the effective date of this act at the rate of 4 per cent per annum, except that legacies for maintenance, or to the testator's widow, bear like interest from the testator's death. ..." (The italicized portion was added by the 1941 amendment.)
[fn. 4] 4. See footnote 3, supra, p. 42.
[fn. 4] 4. See footnote 3, supra, p. 42.
[fn. 5] 5. See footnote 3, supra, p. 42.
[fn. *] *. Assigned by Chairman of Judicial Council.