[Civ. No. 13328.  First Dist., Div. One.  June 26, 1947.]

Estate of VIDA GRENVILLE JACKS, Deceased.  ROMIE C. JACKS, Appellant, v. MARGARET A. JACKS et al., Respondents.

Ralph W. Smith and W. H. Buckingham for Appellant.

Pillsbury, Madison & Sutro, Maurice D. L. Fuller and Francis N. Marshall for Respondents.

PETERS, P. J.—By the decree of distribution in the estate of Vida Jacks certain property was distributed to trustees to be held in trust as provided in the will and in the decree of distribution. Thereafter the trustees filed their "First Account and Report of Trustees, Petition for Settlement and for Instructions," and Romie C. Jacks, brother of the testatrix, filed objections thereto, contending that the trustees had acted improperly in charging certain property taxes, certain interest on a deficiency on the federal estate tax, and certain payments made to him, against the income of the trust, it being his contention that all three items should have been charged against the corpus of the trust. The lower court entered its order settling the account as filed, holding that the three items in question were properly charged against income. From that order Romie C. Jacks appeals.

Under the will of Vida Jacks, and the decree of distribution in her estate, appellant is one of five income beneficiaries of a trust, it being provided that the trust should continue during the lives of the five beneficiaries, and upon the death of the last survivor should terminate. Appellant has no interest in the remainders in the corpus upon the termination of the trust. He, therefore, has a direct financial interest in the determination of whether any particular charge is made by the trustees against income or corpus.

The will of Vida Jacks was executed in October, 1940. She died June 26, 1943. There are several provisions of her will that are pertinent here. In setting up the trust, in article seven, subdivision (d), the testatrix provided that: "Fees and commissions of the trustees for their ordinary and usual services as such, whether on account of income or principal, other than those payable on the termination of the trust, shall be a first charge against income. In other respects the determination of the trustees shall be conclusive as to whether any payment received or charge incurred shall be credited to or charged against income or principal." The decree of

distribution specifically declared that the trustees took the trust property subject to this provision.

In article ten of the will she provided that: "I direct that any and all estate, inheritance, and similar taxes which may be chargeable against my estate or against the gifts, devises, bequests and other interests hereunder, or any of them, shall be paid out of the general assets of my estate, it being my intention that no devisee, legatee or other beneficiary hereunder shall be required to pay personally any tax or taxes which may be imposed on account of his or her interest in my estate, and that no such tax or taxes shall be deducted from the amount of any legacy or devise herein provided for."

The facts in reference to the contract payments involved require further elaboration. At the time Vida executed her will in October, 1940, the Jacks family was composed of four sisters—Lee, Margaret, Mary and Vida (the testatrix)— and one brother—appellant Romie Jacks. Lee died on January 1, 1941. There was a dispute over her estate. On July 11, 1941, the three surviving sisters entered into a contract with appellant and his wife, and it is Vida's portion of the payments made under this contract that appellant claims should be charged to the corpus of the trust set up by Vida. Under the terms of this contract the three sisters agreed, jointly and severally, to pay to appellant the sum of $600 per month for his life, plus other sums not here involved. Appellant agreed to release Lee's estate, and the surviving sisters, from any claims he might have against it or them. The three surviving sisters agreed to release appellant from all claims they might have against him, and to hold him harmless from any claim Lee's estate might have against him. The contract contained this clause: "It is anticipated that some or all of Second, Third, and Fourth Parties [the surviving sisters] may make provision for payments to First Parties [appellant and wife] in their respective last wills and testaments, and in such event it is understood that any payments made under the provisions of each will shall be deemed to be a credit on the obligation provided for in paragraphs 1 and 2 of this agreement, not to exceed one-third ($\frac{1}{3}$) of such obligation in the case of each will."

When this contract was executed Vida had already executed her will in which, as already indicated, appellant had been named as a life income beneficiary. On the day following the execution of the contract Vida executed a codicil to

her will by which, so far as pertinent here, she provided: "I hereby declare that I and my two sisters, Margaret A. Jacks and Mary Jacks Thomas, have entered into an agreement dated July 11, 1941, with my brother, Romie C. Jacks and his wife, Mabel W. Jacks, providing for certain payments to be made by me and my sisters to them. I hereby amend my said last will and testament dated October 28, 1940, so that any payments to be made thereunder to my brother, ROMIE C. JACKS or to MABEL W. JACKS, his wife, shall be credited upon my obligation to him and her under said agreement of July 11, 1941, to the extent of $200 per month in the case of my brother and $100 per month in the case of his wife. In all other respects my said will of October 28, 1940, is hereby confirmed and republished."

Upon the death of Vida, which occurred June 26, 1943, appellant filed a claim against her estate based on the contract provisions. The decree of distribution in Vida's estate recognized the validity of that claim and provided that such claim, from its nature, could not be satisfied in the course of administration "but should be provided to be satisfied by the trustees." The decree further provided that as a charge on the trust "prior to the payment of any income, said trustees are hereby authorized and directed to pay to Romie C. Jacks . . . the moneys agreed to be paid" to him under the contract, and that trust income payments to appellant should be applied to Vida's obligation to him under the contract, not to exceed $200 monthly, and that if Margaret or Mary had to pay in excess of one-third of the total $600 per month due appellant under the contract the sisters might have contribution from the trustees "to the end that the payments by Margaret A. Jacks, Mary Jacks Thomas and the trustees are equal."

During administration the executors charged the $200 a month payable to appellant under the allowed claim based on the contract to income and not to corpus. During such time the executors paid to appellant $200 a month for nineteen months, or a total of $3,800. In their final account the executors asked for an order: "Determining the amount of net income in the hands of your petitioners which is distributable as such to the residuary trustees and which in turn trustees are to pay to the beneficiaries of the residuary trust." In response to this request for instructions the decree of distribution orders that the sum of $76,822.57 and some

stock "constituting income of the trust" should be distributed as follows:

"To Romie C. Jacks   $12,377.28
To Margaret A. Jacks   $15,913.45
To Mary Jacks Thomas   $16,177.28
To Ernest Romie   $16,177.28
To Karl Romie   $16,177.28"

The persons above named are the five life income beneficiaries of the trust setup in Vida's will. Margaret A. Jacks, above named, received $263.83 less than the last three named beneficiaries because of a claim of Vida's estate against her. The sum awarded to appellant as "income" of the trust is obviously $3,800 less than was given to the others, thus clearly demonstrating that under the decree of distribution in Vida's estate the money paid to appellant under the contract was charged against the income and not the corpus of the trust. This decree of distribution was rendered December 26, 1944. No appeal was taken from it, so it was, of course, final when the trustees filed herein their account and petition for instructions in February, 1946. But the decree of distribution cannot be accepted as determining that the contract payments (or the property taxes which were also charged by the executors against income) should be charged against income because the decree of distribution expressly declared: "It is further ordered, adjudged and decreed that nothing contained in this decree shall conclude this Court, upon a hearing of a petition for instructions of the Trustees in that behalf or upon a hearing of a petition which may be filed by Romie C. Jacks from determining and adjudicating whether property taxes amounting to eight thousand four hundred dollars and fifty cents ($8,400.50) which were a lien at the time of the death of the said Vida Grenville Jacks, alias, deceased, should be charged against the income of the trust or against the corpus thereof and/or whether payments aggregating three thousand eight hundred dollars ($3,800) made to Romie C. Jacks should be charged against the income or the corpus of the trust, and that this Court shall have jurisdiction to hear a petition or petitions raising the questions hereinabove mentioned and to determine and adjudicate the same, and direct the Trustees to make such adjustments in charges and credits as between said Romie C. Jacks and the corpus of the trust and/or between said Romie C. Jacks and the other life tenants of the trust as it may deem proper."

The record shows that, during the one-year period covered by the first account of the trustees which is here challenged, the trustees paid to appellant the sum of $2,400 on the contract obligation, and deducted that from what he was entitled to as a life-income beneficiary of the trust. His share, as a life tenant, was $11,277.71, against which was credited the $2,400, so that as a life-income beneficiary he received $8,877.71.

The petition of the trustees thus indicates that the $200 monthly payments due under the contract have been charged to income of the trust. The petition also shows that the trustees charged the property taxes in the sum of $8,400.50, and the interest on the estate tax deficiency, in the sum of $409.10 to income. The order of the court below, from which this appeal is taken, approved these allocations by the trustees.

The appellant in his opening brief, which is the only brief filed on his behalf, argues that, under the law, all three of the challenged items should have been charged against the corpus of the estate. He makes this argument in disregard of, and in fact without mentioning, the provision of article seven of the will, incorporated into the decree of distribution, above quoted, to the effect that the fees and commissions of the trustees, other than on termination, shall be a first charge against income and that ''in other respects the determination of the trustees shall be conclusive as to whether any payment received or charge incurred shall be credited to or charged against income or principal.'' At the oral argument, counsel for appellant urged that if, under the law, the three challenged items would normally be charged against the corpus, such clause could not operate so as to confer discretion upon the trustees to charge the items to income. Counsel also argued that, in any event, it was an abuse of discretion on the part of the trustees to charge such items against income.

Appellant has misconceived the legal effect of the clause conferring discretion on the trustees in determining whether particular items should be charged against income or corpus. If appellant's first argument above mentioned were sound, the clause in question might just as well have been omitted from the will and decree. Both reason and authority compel the conclusion that where such discretion is conferred upon trustees the exercise of such power will not be interfered with by the courts, even if the court would

have exercised the power conferred differently, in the absence of a showing that the trustees acted dishonestly or from an improper motive, or acted beyond the bounds of a reasonable judgment.

That this is the law is demonstrated by the provisions of our California Principal and Income Act of 1941. (Stats. 1941, p. 2476, ch. 898; 3 Deering's Gen. Laws, Act 8696.) Section 2 of that act provides: "This act shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen, in all cases where a principal has been established with . . . the interposition of a trust; except that in the establishment of the principal provision may be made touching all matters covered by this act, and *the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so,* and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this act. *The exercise by the trustee or other designated person, of such discretionary power if in good faith and according to his best judgment, shall be conclusive, irrespective of whether it may be in accordance with the determination which the court having jurisdiction would have made.*" (Italics added.)

This statutory provision is apparently based upon the Restatement of Trusts, section 187. That section provides that: "Where discretion is conferred upon trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." In comment "e" to that section appears the following: "If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee."

Section 233 of the Restatement is the general section relating to the allocation of receipts and expenses between corpus and income. Comment "p" to that section contains this ob-

servation: "The trustee may be given discretion in allocating receipts or expenditures to income or principal. The extent of the discretion thus conferred upon the trustee depends upon the interpretation of the trust instrument. Thus, his discretion may be limited to situations where he is in reasonable doubt whether under the law and the facts certain receipts or expenditures should be allocated to income or principal; or discretion may be conferred upon him to make such an allocation as in his opinion is fair and reasonable. The exercise by the trustee of the power thus conferred upon him is not subject to control by the court, except to prevent an abuse by the trustee of his discretion (see § 187)."

In *Commissioner of Internal Revenue* v. *Wade*, 155 F.2d 918, it was held that, although the trust provided that estate taxes should be payable out of principal, the trustees had acted properly in charging interest on tax deficiencies to income, where the trust conferred discretion on the trustees "to determine whether money or property coming into its possession shall be treated as principal or income, and to charge or apportion gains, expenses and losses to principal or income, according as it may deem just and equitable." (P. 918.)

Under these authorities it seems obvious that the questions before this court, and the questions decided by the lower court, are not whether the three items questioned would normally be charged against income or corpus, but, in view of the broad power of discretion conferred on the trustees, whether the will and decree directed how the charges should be allocated, or whether the trustees abused their discretion in making the allocation they did. Appellant has made no showing of an abuse of discretion, but, as already pointed out, has, in his brief, simply disregarded the grant of discretion to the trustees. The will and decree, without ambiguity, vest in the trustees a complete discretion, except as limited by that clause and other provisions of the will, in allocating expenditures to principal or income. The record shows that the trustees have exercised their discretion by allocating these three expenditures to income. The will does not direct the contrary. Thus, we are limited in our review to a determination of whether the record, as a matter of law, shows an abuse of discretion on the part of the trustees.

That no abuse of discretion existed as to any one of the three items is too clear to require extended discussion. Even

in the absence of the discretionary power in question it would probably be the law that all three items should be charged to income, but, to say the least, the questions involved are reasonably debatable. This being so, the exercise of the discretionary power cannot be successfully attacked.

■ First, as to the interest on the federal tax deficiency amounting to $409.10. The will and decree provided that "all estate, inheritance, and similar taxes" were to be paid out of the general assets of the estate. The federal tax deficiency was charged by the trustees to principal, but they charged the interest on such deficiency to income. The weight of authority is to the effect that interest on such taxes should be charged to income. It is true that in *Matter of Clark*, 169 Misc. 202 [7 N.Y.S.2d 176], the court held that if taxes should be paid from principal, so should interest thereon, but that case is out of line with many other cases, and contrary to the Restatement. In comment "e" to section 233 of the Restatement of Trusts it is stated: "Ordinary current expenses in connection with the administration and management of the trust are payable out of income. These include . . . interest on mortgages and other indebtedness."

The reason for this rule was clearly set forth in *Penrose* v. *United States*, 18 F.Supp. 413. In that case the will directed, as does the instant one, that taxes should be paid by the estate and not by the beneficiaries. As in the instant case, the trustees paid a deficiency estate tax out of principal and the interest thereon out of income. There was no discretionary power vested in the trustees as to allocation of principal and income. It was held that, as a matter of law, interest on a deficiency tax was not part of the estate tax, but was the same as interest or any other indebtedness and should be paid from income. In giving its reasons for this holding the court stated (p. 416): "We, therefore, conclude that it was proper to pay the interest here in question out of the income of the estate rather than out of the principal which the executors had reserved for the payment of taxes. We are fortified in this conclusion by the fact that a contrary holding would be manifestly unfair to the remaindermen since delay in the payment of the tax would be entirely at their expense while the life tenants through their receipt of the income upon the principal funds reserved to pay the tax would actually benefit from the delay."

The same conclusion was reached on similar facts in *Jones* v. *Hassett*, 45 F.Supp. 195. In *Commissioner of Internal*

*Revenue* v. *Wade*, 155 F.2d 918, cited *supra* on the discretion point, the court, although directly holding that the trustees, as in the instant case, had complete discretion and that their choice was controlling, by way of *dicta*, stated (p. 918): ". . . we cannot find any peculiar Ohio law to guide us, for it does not help to a solution that the courts of that state have held that inheritance taxes are payable from the corpus. As a matter of equity, however, interest falling due upon an estate tax during a delay in the payment of a deficiency ought to be borne by the life beneficiary, at least so far as he has during the delay actually received income, which he would not have received had the correct tax been ascertained and paid at once."

It is clear that, so far as this item is concerned, there was no abuse of discretion in allocating this item to income rather than to principal.

The same legal situation exists as to the property taxes amounting to $8,400.50. These taxes were California real property taxes for the taxable year July 1, 1943-June 30, 1944. But, says appellant, in this state, under Revenue and Taxation Code, section 2192, tax liens attach on the first Monday in March preceding the fiscal year for which they are levied. Therefore, so the argument goes, at the death of Vida on June 26, 1943, these taxes were a lien, and should have been paid from principal and not income. It is a general rule that taxes due, or at least assessed, prior to death, should normally be paid from principal (4 Bogert on Trusts, p. 2330, § 804), while taxes assessed thereafter are payable from income. Thus section 12(1) of the Principal and Income Act provides that: "All ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes assessed against any portion of the principal . . . shall be paid out of income." This is also the rule of the Restatement. (See comment "e" to § 233 of Restatement of Trusts.)

There can be no doubt that these taxes were a lien at the date of death, although not yet assessed or due. The lien for the taxes came into being on the first Monday in March, 1943 (Rev. & Tax. Code, § 2192), although the tax had not yet been assessed. The property assessment had to be computed by the first Monday in July (Rev. & Tax. Code, § 616); the tax would thereafter be computed and levied (§ 2152); the first

installment was due November 1, 1943 (§ 2605), and the second due January 20, 1944 (§ 2606).

It is the theory of appellant that, because these taxes were a lien on the real property which comprised the trust estate prior to the death of the testatrix, the tax obligation was of an exceptional and nonordinary nature, and hence chargeable to corpus. It is urged that where taxes are a lien at the time of death they must be a charge on that property. In support of this conclusion considerable reliance is placed on *Estate of Whartenby*, 2 Coffey's Prob. Dec. 509, which involved the question whether taxes which were a lien but not assessed at the time of a sale should be paid by the purchaser or seller. It was held that they should be borne by the seller. Whether that case is correct or not (a point we do not decide) is not important. It decides nothing on the question as to whether such a charge should be allocated to principal or income.

Appellant also cites *In re Cronise's Estate*, 167 Misc. 310 [6 N.Y.S.2d 392], in which the intermediate appellate court of New York passed upon an apportionment issue arising out of the payment of California taxes. The court in that case misinterpreted the California law. It stated that the lien of the taxes became effective on January 1, 1933, when the lien does not, in fact, come into being until the first Monday in March. It also held that when the lien came into existence it became a tax *assessed* prior to the death of the testator. Of course, under our law, a tax is not assessed at the time the tax lien comes into being. Because of this clear misapprehension of the California law, the case is only the weakest kind of argumentative authority.

Appellant's interest in income started from the date of death of the testatrix. (*Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825].) On that date, June 26, 1943, the tax had not been assessed, nor was it payable. The tax was for a fiscal year that started after the death of the testatrix. It was therefore an ordinary, normal expense that, in view of the discretionary power granted, the trustees could charge to income.

This conclusion is strengthened by another provision of the will, also incorporated into the decree of distribution. The testatrix directed the trustees in handling the trust estate to "collect and receive the income, returns, and profits thereof, and after paying all necessary costs, taxes, and other expenses incidental to or growing out of this trust, to pay out and

disburse the entire net income derived from the trust estate as hereinafter directed.'' This provision can be interpreted as an express direction to pay the taxes out of income.

Under these circumstances it was not an abuse of discretion for the trustees to allocate this charge to income.

■ It cannot be held, as a matter of law, that the trustees abused their discretion in allocating the contract payments to income. The appellant urges that the contract obligation preexisted the death of the testatrix and was therefore a charge on her estate. He places considerable reliance on the direction in the decree of distribution that the contract payments were to be paid ''out of the trust property.'' The appellant misinterprets that direction. That direction does not necessarily mean that the payments must come out of corpus. As already pointed out, the court in its decree expressly provided it was not directing from what source the contract payments should come, but was expressly reserving the power to hear a petition to determine the proper source of the payments.

Appellant likewise urges that the contract obligation was an extraordinary and unusual expense and therefore should be paid out of corpus. While such argument might be entitled to some weight in a case where discretion was not conferred on the trustees, it certainly cannot be held that where such discretion is conferred such charge so clearly is one against corpus that to charge it against income was, as a matter of law, an abuse of discretion. It must be remembered that by the contract and the codicil to her will the testatrix directed that payments to appellant as a life-income beneficiary of the trust were to be credited against the contract obligation, not to exceed one-third of the $600 joint and several obligation of the three sisters. Those provisions certainly support the determination of the trustees. They can be reasonably interpreted to constitute a direction that such payments should be made from income.

It is quite apparent that appellant has not shown an abuse of discretion on the part of the trustees in making the allocations in question. This being so, the order must be and is affirmed.

Ward, J., and Bray, J., concurred.