[Civ. No. 3912.   Fourth Dist.   Sept. 2, 1948.]

Estate of CLARENCE WATSON McCABE, Deceased.  VIR-
GINIA ROSE McCABE BURWELL, Appellant, v.
VIOLET M. McCABE, as Trustee, etc., Respondent.

Joseph E. Daly for Appellant.

Monroe & McInnis for Respondent.

MUSSELL, J.—This appeal is taken from an order and
judgment discharging Violet M. McCabe as trustee under the

will of Clarence Watson McCabe, deceased, and approving her first and final account as such trustee. This proceeding was brought under section 1121 of the Probate Code to require respondent to render an account as trustee to appellant as beneficiary of the trust.

Clarence Watson McCabe died in San Diego on the 6th of February, 1928. By the terms of his last will and testament the sum of $50,000 was left in trust for the use and benefit of his daughter, Virginia Rose McCabe, appellant herein. Respondent, as trustee, was authorized to use the net income of the trust estate and also such portion of the principal as she in her discretion might deem necessary for the proper care, support and education of appellant until she attained the age of 18 years. The will also contained a provision that it was the wish and recommendation of the deceased that such amounts as might be deemed reasonable or proper, in the absolute and uncontested discretion of the trustee, should be used for the care, support and maintenance of appellant, out of said trust money, whether principal or interest, during the continuance of the trust. The testator also expressed the desire that appellant be given a good and thorough education.

The will provided that in the event appellant attained the age of 21 years the trust should terminate and all the trust estate, including increase and accumulations then in existence, should be paid to the appellant.

The decedent at the time of his death owned an automobile agency and the total assets of his estate amounted to approximately $500,000. Pursuant to the terms of the decree of distribution the respondent, Mrs. McCabe, received some $330,000 in addition to the $50,000 set aside for appellant, and a second trust fund of $50,000 distributed to Barbara Jean McCabe, another minor daughter.

Respondent established a bank account in which she deposited the two trust funds together with the amount received by her individually from the estate. Respondent withdrew funds from the account to maintain and support herself and two daughters, in addition to withdrawals for investment purposes. Respondent testified that out of the commingled funds she purchased for herself a participating life income insurance policy from the Penn Mutual Life Insurance Company in the principal sum of $170,000, with a yearly life income for her of $5,100 commencing December 5, 1930.

Appellant attained the age of 21 years on July 23, 1942,

and commenced this proceeding to require respondent as trustee to render an account.

The first and final account filed by respondent on November 12, 1947, contains her verified statement that she had expended on behalf of appellant, during the period beginning April 5, 1929, to the 10th of November, 1947, the sum of $54,065.34, and that there are no remaining assets for distribution under the trust.

The account, summarized, contains charges for appellant's proportionate share of the costs of trips to Honolulu, Yosemite Valley, Switzerland, Germany, Spain, Quebec, Banff, Lake Louise and elsewhere, together with amounts charged for board, lodging, supplies, dental and medical care, clothing, personal expenses and incidentals paid for appellant while attending schools in Europe and elsewhere, all amounting to the sum of $23,050.74.

For one-third of the cost of maintaining the family home in San Diego from 1928 to 1942, including taxes, insurance, water, lights, gas, telephone, termite and ant control service, repairs and house painting, $8,514.60.

Reasonable average cost of maintaining appellant in her accustomed manner of living, including such items as clothing, laundry, cleaning, minor medical and dental care, money allowance, board, etc., $125 per month, or $1,500 per year for 15 years, 1928 to 1942, in the total amount of $22,500.

The trial court found that the expenses set forth in the first and final account and report of the trustee were actually paid by the trustee; that they were incurred in good faith for the use and benefit, and for the maintenance, support and education of appellant, and that the expenditures so made were proper and were properly charged against appellant.

The principal contention of appellant is that the evidence is insufficient to sustain this finding and to support the order and judgment settling the final account and discharging the trustee.

At the time of his death, the yearly living expenses of decedent and his family amounted to $25,000; an allowance of $600 per month was received by respondent for her personal expenses, and the family was accustomed to travel considerably. After decedent's death appellant was sent to the finest of schools, both here and abroad, and was taken on many vacation and travel tours by respondent. Most of the items of the account are for expenses incurred in attendance at such

schools, and travel tours, together with cash advanced to appellant for incidental expenses. No books of account were kept by respondent; no vouchers showing the expenditures were presented to the court and the proof of the payment of the items in the account consisted of the testimony of respondent that the various sums had actually been paid by her, together with other evidence that appellant had actually attended the schools named and had visited the places described in the account.

In this connection it should be noted that the decedent, by the terms of his will, authorized respondent to exercise her "absolute and uncontrolled discretion" in the expenditures of the trust fund in the care, support and education of appellant.

In *Estate of Jacks*, 80 Cal.App.2d 562, 567 [182 P.2d 605], the court, in considering the legal effect of a clause in a will conferring discretion on the trustee, in determining whether particular items should be charged against income or corpus, held that where such discretion is conferred upon trustees the exercise of such power will not be interfered with by the courts, even if the court would have exercised the power conferred differently, in the absence of a showing that the trustees acted dishonestly or from an improper motive, or acted beyond the bounds of a reasonable judgment.

Appellant contends that the account should not have been allowed because of the fact that no vouchers nor receipts for the expenditures from the trust funds were presented to the court and because of the failure of respondent to render a full account of her dealings with the trust funds.

Our attention has not been directed to any statutory requirement that trustees must furnish written vouchers to support expenditures from trust moneys but it was held in *Purdy* v. *Johnson*, 174 Cal. 521, 531 [163 P. 893], that it is the duty of trustees to support every item of their account, and that wherever they fail to support the correctness of a charge or a credit by satisfactory evidence, the item must be disallowed.

An examination of the account discloses the fact that respondent charged appellant the sum of $8,514.60 for a third of the expense of maintaining the family home in San Diego from 1929 to 1942. At the time the trust money was received by respondent, Virginia Rose McCabe was of the approximate age of 7½ years. She was not at the family home much of the time during the ensuing 15 years. According to the account she was a student at an academy in San Diego during the years 1929 and 1930, and during 1931-33, attended a school

in Switzerland for 27 months. During 1933-34, she attended a school in New York for nine months, and in 1934, entered an academy in New Jersey and remained there until June of 1937. From September, 1937, to June, 1938, we find her in the Bishop's School of La Jolla, California, and also in New Jersey again from September, 1938, to June, 1939. Appellant attended Saint Mary's College, Brentwood Heights, California, in September, 1940, and remained there until the following June when she attended the University of Arizona for nine months. During all of these years appellant was charged with one-third of the amount of annual expense and upkeep of a home in San Diego.

The evidence offered in support of the necessity for and in the proof of these amounts is questionable. However, there is some evidence to support the finding of the trial court in this respect. Had we been the trial judge a different result might have obtained on the evidence presented.

There is also some evidence in the record to support the finding of the trial court as to the charges made against appellant for expenses on the numerous vacation trips, and for the amounts paid for appellant while attending school.

However, the item of the account which purports to charge appellant $22,500 for items such as clothing, laundry, cleaning, minor medical and dental care, money allowance, board, etc., $125 per month, or $1,500 per year for 15 years, 1928 to 1942, in our opinion should not be allowed and is not supported by sufficient evidence to overcome the presumptions against the trustee upon a settlement.

Respondent testified that she did not keep any detailed account of money spent for the incidentals making up the total of $22,500. She was asked the average cost to her of clothing, spending money, laundry, cleaning and minor medical and dental care during that time and stated that she "figured about $125 per month, some months more and some months less, it averaged that." Appellant, when but 7½ years of age, is charged at the rate of $125 per month for board, clothing, minor medical care and incidentals. Many such charges appear to be included in the amounts charged under school expenses and vacation trips. At best the testimony of respondent in this particular amounts to a mere guess or conjecture and falls far short of the degree of proof required.

In this connection it should be noted that respondent has admitted the commingling of her own funds with those of appellant. Section 2236 of the Civil Code provides:

"A trustee who wilfully and unnecessarily mingles the trust property with his own, so as to constitute himself in appearance its absolute owner, is liable for its safety in all events, and for the value of its use." (See, *Matter of Bane*, 120 Cal. 533 [52 P. 852, 65 Am.St.Rep. 197].)

█ The good faith or intention of respondent is in no way involved in the question of her liability and we conclude that the mingling of her property with that of appellant constituted a breach of trust. (*Estate of Evans*, 62 Cal.App.2d 249, 258 [144 P.2d 625].) By her own admissions respondent has failed to comply with the obligation which rests upon all trustees to keep full and accurate accounts of the trust funds coming into their hands and to render an account thereof to their beneficiaries.

█ In *Purdy* v. *Johnson, supra,* at page 527, it is said:

" 'Trustees are under an obligation to render to their beneficiaries a full account of all their dealings with the trust fund (3 Pomeroy's Equity Jurisprudence, sec. 1063; 28 Am. & Eng. Ency. of Law, 2d ed., p. 1076), and where there has been a negligent failure to keep true accounts, or a refusal to account, all presumptions will be against the trustee upon a settlement. (*Lupton* v. *White*, 15 Ves.Jr. 432, 440 [33 Eng. Reprint 817]; *Blauvelt* v. *Ackerman*, 23 N.J.Eq. 495; *Landis* v. *Scott*, 32 Pa.St. 495.)' (*Bone* v. *Hayes*, 154 Cal. 759, 766 [99 P. 172].)' "

It was there held also that the burden of proof was not on the beneficiary to point out the particulars in which the account was erroneous.

In our opinion the evidence offered by respondent fails to support the order and judgment of the court approving the account as to the charges in the sum of $22,500 for alleged expenditures of $125 per month.

The judgment insofar as the allowance and approval of the item of $22,500 in the account are concerned, is reversed, and is affirmed as to the items of $23,050.74 and $8,514.60. Appellant to recover costs on appeal.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied September 23, 1948, and appellant's petition for a hearing by the Supreme Court was denied October 29, 1948. Carter, J., Traynor, J., and Schauer, J., voted for a hearing.