[Civ. No. 3988, 3989. Fourth Dist. July 20, 1950.]

Estate of CLARENCE WATSON McCABE, Deceased. VIRGINIA ROSE McCABE BURWELL, Appellant, v. VIOLET M. McCABE, Respondent.

Joseph E. Daly for Appellant.

McInnis & Hamilton for Respondent.

BARNARD, P. J.—Mr. McCabe died on February 6, 1928. Under the terms of his will and a decree of distribution entered on April 5, 1929, Mrs. McCabe received some $330,000 and also received $50,000 in trust for their daughter Virginia, the trust to terminate when she reached the age of 21 years. Admittedly, Mrs. McCabe mingled these trust funds with her own, kept no record or account, and could produce no receipt or voucher of any kind. Virginia reached the age of 21 years on July 23, 1942.

On November 12, 1947, the "First and Final Account" of this trusteeship was filed by Mrs. McCabe after a citation had been issued. (See *Estate of McCabe,* 80 Cal.App.2d 823 [183 P.2d 72].) In this account, she charged herself with $50,000 and claimed credits of $54,065.34 for expenditures over a period of 15 years, from 1928 to 1942. Briefly stated, about $23,000 was charged as the expense at certain schools and of various trips; about $8,500 as the beneficiary's share of maintaining the family home; and $22,500 as the "reasonable average cost (of board, clothes, laundry, etc.) for 15 years, 1928 to 1942" at $125 per month. An order approving that account was reversed, on appeal, as to this last item. (*Estate of McCabe,* 87 Cal.App.2d 430 [197 P.2d 35].)

On June 21, 1949, Mrs. McCabe filed a supplemental account listing monthly charges for food, clothes, laundry, etc., in the various years, with "total expenditures for Virginia for 15 years, 1928 to 1942—$23,739.45." An equitable action was also brought by Virginia seeking to have the trust funds traced, marshalled and impounded; asking for declaratory relief and a recovery of the amount due; and praying for such other relief as might be just. These matters were consolidated and heard together. The court found, with respect to the supplementary account, that the trustee had thus expended $23,-

739.45, or more than the $22,500 for which she was required to account; that in so doing she had exercised her discretion; and that although no accounts had been kept it was established by evidence satisfactory to the court that these amounts were actually and properly spent for the benefit of the beneficiary. An order was entered approving the account and discharging the trustee. With respect to the other action, the court found that the trustee had thus expended in excess of $50,000; that while she had mingled the trust funds with her own, she had now made a full and proper accounting; and that her account had been approved. A judgment was entered that the plaintiff recover nothing. The beneficiary has appealed from this judgment and also from the order settling the supplemental account.

Some statutory rules as to the duties and obligations of trustees should not be overlooked. A trustee must act in the highest good faith toward his beneficiary and may not take any advantage by the slightest concealment (Civ. Code, § 2228). A trustee who mingles the trust property with his own, so as to appear to be its owner, is liable for the value of its use (Civ. Code, § 2236). A trustee must invest money, as fast as collected in sufficient amount, so as to afford reasonable interest thereon (Civ. Code, § 2261). A trustee who omits to thus invest trust money must pay simple interest thereon if merely negligent, and compound interest if the omission is wilful (Civ. Code, § 2262). Trustees are also under an obligation to render to beneficiaries a full account of all their dealings with the trust property, and where there has been a negligent failure to keep true accounts all presumptions are against them upon a settlement. (*Purdy* v. *Johnson,* 174 Cal. 521 [163 P. 893].) Trustees are also under the duty to prove every item of their account by "satisfactory evidence"; the burden of proof is on them and not on the beneficiary; and any doubt arising from their failure to keep proper records, or from the nature of the proof they produce, must be resolved against them. (*Purdy* v. *Johnson, supra.*)

Not only is this account faulty in itself but the evidence that these amounts, as totaled but not itemized, were actually spent is unsatisfactory. The supplemental account purports to set up general living expenses from 1928, to and including the first half of 1942. No quantities or amounts are given as to specific items, and the cost of board, clothes, laundry, etc., is merely listed at so much a month or a year, with totals for

the respective years. A charge of $1,655 (or $2,287 if the first account is remembered) is made for the year 1928, and a large amount for the first three months of 1929. During that period the trust was not in existence, and a large family allowance was being made from the estate. Also, an analysis shows that many of the charges in this account are duplicates of others allowed in the first account.

The trustee's testimony contains many contradictions and clearly discloses that she was relying on general estimates and could not, and did not, remember much of anything about these expenses. She testified that at the time of the first hearing she had no memory at all as to the items making up this $22,500; that her new account was a computation she had made up since the prior hearing; that she arrived at the items of this account after talking with her maid and with people ''that keep homes like I kept mine''; that she refreshed her memory and made a general estimate; that ''I sat down and sort of figured it out what clothes cost and I more or less worked on a little budget,'' and that ''all this figuring'' has been done since the first trial; that she kept no record and had no checks or receipts of any of the figures given; that she made a general calculation; and that while she could not tell about the specific items, ''I know I spent that money.'' In over 100 pages of her testimony she made no attempt to give the actual cost of any article except for one $100 item. Not only is it inconceivable that she could have made the required ''full and true account'' from memory, after all these years, but it clearly appears from her own testimony that she had, at the second hearing as at the first, no memory as to the items involved. Her prior guess of $125 a month was merely broken down into so much a month, under some half dozen headings, for each of the years. Her testimony, as we said on the prior appeal, ''amounts to a mere guess or conjecture and falls far short of the degree of proof required.''

Assuming that these amounts were actually paid for the support of the daughter, a question remains as to whether they were intended at the time as payments from the trust funds. Apparently, she treated the mingled fund as her own and took care of her daughter as an ordinary mother would. She did not testify that she had any such intention when the payments were made, and her evidence tends to indicate that any intention to thus charge the trust estate was an afterthought. Although they had a violent quarrel on the daughter's twenty-first birthday and the daughter then left home, she made no attempt to make an account, or to establish her claim to these credits, until

forced to do so some years later. She also testified that her daughter wanted to become a nun when she was 18 years old; that "I told her then she would have to give up everything her Daddy left her"; and that she had the $50,000 at that time. When asked where it then was, she replied: "Well, we just had the family fund. I told you I didn't segregate it, whether it was $50,000 or $40,000, I just had the family fund" and that she "had it then in the fund."

She now contends that she is entitled to credit for these expenses, and relief from further obligation, under the "discretion" given her by the trust provisions. The will, in setting up this trust, provides that the trustee shall hold and manage this $50,000, with the income thereof, for the use and benefit of this daughter; that the income, or such portion of it as may be necessary, shall be used for the proper support and education of the daughter until she is 18 years old; that until such time "such portion of the principal as in the absolute and uncontrolled discretion of said trustee may be necessary," may also be used for this purpose; that when the daughter reaches that age all of the accumulated income shall be paid to her; and that all net income shall then be paid to her until she attains the age of 21 years. The next paragraph provides that when the daughter reaches the age of 21 "all of the said trust estate and all increase and accumulations thereof then in existence shall be paid and delivered (to her) absolutely." A wish and recommendation is then expressed that the daughter be given a good education and that during the continuance of the trust "such amounts as may be deemed reasonable or proper in the absolute and uncontrolled discretion of" the trustee shall be used for the support and maintenance of this daughter "out of said trust money, whether principal or interest." The trustee was also authorized to invest and reinvest the trust fund, from time to time, in investments permissible for savings banks or trust companies.

These trust provisions did not authorize the trustee to mingle the trust funds with her own, or to treat the trust as nonexistent. The recommendations therein should be considered with the specific directions. It clearly appears that the purpose was to make sure of proper support for the daughter, mainly from income but from the principal if it became necessary. Reasonably construed, the trust provisions required the trustee to invest the funds and to use the income so far as necessary for the support of the daughter, and also permitted

her to use the principal for that purpose if it became necessary, giving her a broad discretion as to what conditions should constitute such a necessity. The discretion thus given to the trustee, while broad, is not sufficient to authorize or justify the manner in which this trust was handled, or to relieve her of the necessity of establishing her charges against the trust estate by evidence which is satisfactory under general rules.

Mrs. McCabe violated her duties as trustee, statutory and otherwise, by mingling these funds with her own, by omitting to invest them so as to provide an income, and by negligently failing to keep any records which would enable her to render a true account. Moreover, she testified that she never discussed the matter of this trust with her daughter who was to receive the income itself after she was 18. While this may not amount to concealment, it reflects on the use of the highest good faith since the daughter might well have objected to the high expenses, especially in later years, had she known they were coming out of her legacy.

All of these matters have a bearing on whether such charges are established by "satisfactory evidence," in the absence of any vouchers or records of any kind, and when all presumptions are against the trustee. It can hardly be said that a proper exercise of discretion appears, under the plain meaning of the trust provisions. There is no direct evidence that any such discretion was exercised or as to when it is supposed to have occurred. The very act of continuing to pay the expenses from the mingled fund, without keeping any record thereof, indicates that the trustee was treating it as a whole and as a "family fund," as she testified, rather than that she was exercising any discretion because she considered that conditions had made this necessary. The mere fact that these total expenses happen to equal the original trust fund is neither controlling nor of great weight. The discretion given her, while broad, was not sufficient for the purpose here claimed. Her right to these credits, upon this ground, was not established by such satisfactory evidence as the law requires.

A further consideration is that she is chargeable with the value of the use of these trust funds which were thus mingled. Some considerable interest is involved, and this not only directly concerns the matter of necessity, and the use of any discretion, but materially affects the total amount for which she is accountable. While this matter was suggested in our prior opinion (87 Cal.App.2d 430) it was not considered on the rehearing which was directed only to ascertaining whether

she had actually spent, for the daughter's support during the years, an amount equalling the item which had been reversed. The controlling issues have never been squarely met or decided in the trial court.

In practical effect, this trustee has disregarded the trust and treated the mingled fund as her own, thus wiping out the entire trust estate and largely defeating the purpose and intent for which the trust was created. While on the former appeal we reluctantly affirmed a part of the court's order, although we questioned the evidence in that regard, we feel that no court should place the stamp of approval on the manner in which this trust was conducted or upon such an accounting as is here made. Not only is the highest good faith required of a trustee but he must be held to strict accountability, with all doubts resolved against him, to the end that he may not be permitted either to dissipate or waste the trust estate, or to profit from his own negligence or fault. Under well established rules, a trustee should not be discharged from all liability on such unsatisfactory evidence as here appears.

The order and judgment in the respective proceedings are reversed.

Mussell, J., concurred.

A petition for a rehearing was denied August 8, 1950, and respondent's petition for a hearing by the Supreme Court was denied September 13, 1950.