[Civ. No. 4951. Fourth Dist. May 19, 1955.]

ALBERT RAYMOND, Appellant, v. INDEPENDENT GROWERS, INC. (a Corporation) et al., Defendants; PACIFIC COAST FRUIT DISTRIBUTORS (a Corporation), Respondent.

H. A. Savage for Appellant.

Stammer, McKnight & Barnum for Respondent.

GRIFFIN, J.—In a second amended complaint plaintiff alleged generally, in the first cause of action, that on December 4, 1952, plaintiff owned 13,211 packed boxes of Almeria grapes, and 18,346 of Emperior grapes, which were in storage; that they had been packed by defendant Independent Growers, Inc., and there had arisen a serious dispute between plaintiff and said Independent Growers, Inc., as to the amount due plaintiff from it, and accordingly on that day, an agreement was entered into between them and the defendant Pacific Coast Fruit Distributors, Inc. (hereinafter referred to as PCFD) for the immediate sale of the crops. Attached to the complaint as an exhibit is the written agreement which provides generally that PCFD immediately proceed to market, "on the present favorable market," the grapes in question to the end that the "maximum can be secured under market conditions," PCFD to deduct "ten cents per package for sale and collection of said grapes. . . ."; that only f.o.b. sales shall be made by PCFD unless plaintiff specifically approves other types of sales; that if the market drops "below $1.75 for U. S. No. 1 f.o.b. shipping point," PCFD shall immediately notify plaintiff who shall determine whether they shall continue to sell on the current market or be given other instructions as to distribution of the remaining grapes. The same conditions apply to the Almeria grapes; that PCFD, from proceeds of sale, after deducting 10 cents per package charge, shall apply the balance on account of the disputed obligation between plaintiff and the Independent Growers, Inc., up to the amount of $17,879.81, and thereafter place the balance in the hands of Produce Reporter Company for distribution up to $10,000, balance to be paid to plaintiff by PCFD, as received; that plaintiff Raymond and Independent Growers, Inc., will submit the question as to all differences between them, regarding what true balance is owing to either party, to arbitration with Produce Reporter Company, and each agreed to accept that company's award. Plaintiff then alleged that pursuant to this agreement he delivered to PCFD, as plaintiff's agent and for his account, the grapes indicated, and it proceeded to sell all of them for $68,168.65; that PCFD, after deducting all legitimate charges, had in excess of $30,000 on hand (the exact amount of which was unknown because all the items of proceeds of sale were only within the knowledge of PCFD) ; that plaintiff demanded that it pay Produce Reporter Company $10,000, as provided in the agreement; that PCFD pay to Independent Growers, Inc., $17,879.81, as

therein provided, and that it make a full and complete accounting to plaintiff of the sale of said grapes; that PCFD refused and still refuses to do so and that it, as well as the Independent Growers, Inc., refused to carry out the provisions of the agreement, and have repudiated said arbitration agreement. It then alleges that PCFD received as proceeds of the sale $68,168.65, and after deducting allowable charges and credits, there remains in the hands of PCFD $35,032.06.

As to the second cause of action plaintiff realleges these charges and claims that PCFD has never given plaintiff a true or complete accounting, or any accounting at all of the money received by it for the sale of the grapes; that plaintiff does not have available to him the items of account, expenses, or proceeds of any sales, and that only PCFD has such information; that PCFD only acted as plaintiff's agent and broker in handling the gropes on consignment; that it has $35,032.06 on hand belonging to plaintiff, and that said sum was due and owing from it to plaintiff on April 1st, 1953; that the exact amount cannot be determined without a full and complete accounting by it.

In a third cause of action plaintiff alleges generally that PCFD was employed in writing by plaintiff to sell the grapes, as plaintiff's agent and broker for the account of plaintiff; that it sold them for $68,168.55; that $33,136.59 was a proper charge against said sale and a balance of $35,032.06 belongs to plaintiff from such proceeds; that plaintiff, on many occasions, demanded payment of said sum but defendant PCFD refused to pay it.

The fourth cause of action is a common count of money had and received for said amount. The prayer is for judgment against PCFD for that amount and that the court order a full and complete accounting by it for all grapes sold for the account of plaintiff, and if from such account it be shown that plaintiff is entitled to recover any additional sum plaintiff have judgment against defendant accordingly.

By answer defendants admit plaintiff's ownership of the grapes in question; admit they were the subject matter of the contract; deny that PCFD received $68,168.55 from the sale of such grapes or any sum in excess of $41,049.99; and deny specifically and generally the other portions and paragraphs of the several causes of action. They admit, however, that on or about June 18, 1953, plaintiff "demanded" that PCFD pay the sum of $10,000 to the Produce Reporter Company, as provided by the contract, and that "said defendant refused

and still refuses to do so.'' They also admit that PCFD has never given plaintiff any accounting of the monies received by said defendant from the sale of the grapes. As a separate and affirmative defense defendants allege that about December 15, 1952, plaintiff and defendants, for a good and valuable consideration, mutually agreed to and did abandon, rescind and set aside the written agreement referred to in the complaint.

It appears that prior to the filing of the second amended complaint, plaintiff, pursuant to request and demand, submitted a bill of particulars showing all items making up the balance claimed owing in the complaint. In this instrument, signed by plaintiff's attorney, it is stated that while one T. R. Sunshine, for and on behalf of both defendants, has given some detailed accounting of the sales of grapes made by each defendant, there has been no segregation as to who made the sales and that, in many instances, there have been charges for items for which there is no basis in the account, and a real accounting should be made as prayed for in the complaint; that as near as possible, from what calculations plaintiff has obtained from T. R. Sunshine, defendants received $90,460.13, and are entitled to credits for packaging at 70 cents per lug, totaling $33,792.50, plus commission of $3,155.70; that $42,-256.78 has been paid to plaintiff, leaving a balance due plaintiff in the sum of $11,255.15.

The action went to trial upon these pleadings. In the opening statement counsel for plaintiff stated that plaintiff had not informed him of a $21,000 payment, and asked that the prayer of his complaint be reduced accordingly; that the Independent Growers, Inc., left a statement of accounting with plaintiff showing how the fruit had been sold in January, 1953, and that in that account it showed that ''they had deducted 10 cents for all packages, and had made no allowance for fruit that was packed 'unclassified' ''; that it was the Independent Growers, Inc., which made the accounting; that on receiving this account Sunshine was contacted and asked if he had put up the $10,000 with the Produce Reporter Company and Sunshine refused to carry out the arbitration agreement; that accordingly, since plaintiff was dealing only with PCFD, a 10-cent selling charge by Independent Growers, Inc., was not authorized and an accounting should be had to determine what amount was due and owing to plaintiff.

Counsel for plaintiff and defendants then agreed, in response to a question by the court, that ''Any question on

arbitration is out of it either by admission or conduct of the parties.'' Considerable argument ensued as to the effect of this concession, but it was finally agreed between the parties, as we construe the record, that defendants repudiated the arbitration portion of the agreement and plaintiff agreed to ''call it off,'' but plaintiff would proceed to have defendants account for the fruit it received under the agreement, and so far as this case is concerned, plaintiff and defendants elected not to seek to have this matter referred to arbitration, either now or after the trial, and the court would be allowed to proceed upon the theory that ''the arbitrator is out of this.'' Thereupon a motion was made by Independent Growers, Inc., to dismiss the action against it on the ground that no cause of action was stated. It was granted as to this defendant without objection. Several pages of argument ensued, in which plaintiff's and defendants' counsel stated what they expected to prove. The written agreement referred to in the complaint was received in evidence. Mr. Sunshine, president and general manager of PCFD, and a one-third or one-half owner of the stock in the Independent Growers, Inc., was called by plaintiff under section 2055 of the Code of Civil Procedure. He testified that he marketed the grapes pursuant to the agreement in evidence, for the account of plaintiff and the Independent Growers, Inc., and rendered a true and correct account and carried out the agreement except the portion pertaining to arbitration and paying the amount to Produce Reporter Company; that PCFD indirectly, through Independent Growers, Inc., but not directly, gave plaintiff an accounting; that he did not pay the $10,000 to the Produce Reporter Company under the arbitration agreement and did not pay Independent Growers, Inc., $17,879.81, because the arbitration agreement was rescinded by mutual consent on December 20, 1952, but he did pay them various sums of money at various times. He then related the particulars of a conversation with plaintiff in which plaintiff agreed to accept $21,000 as payment on account because he wanted to pay off a note of his for $20,000 at the bank and he stated that plaintiff said if he paid plaintiff that amount they would mutually agree to call off the impounding agreement in relation to the Produce Reporter Company. He then testified that according to his account PCFD received gross $77,262.60 for the grapes included in the contract and testified from an account prepared by him, showing dates of sales, number of lugs, selling price, gross receipts, deductions for packing, inspection and

other expenses, and a recapitulation of all deductions made. This account was shown to counsel for plaintiff and the witness testified from it in response to questions propounded by plaintiff's counsel who was examining the report at the time. As to some of these sales it appears that the defendant received $2.10 per lug f.o.b. for one lot of 1,260 lugs. The witness testified the Independent Growers, Inc., as agent for PCFD, paid directly to plaintiff $36,256.78, the full amount due and owing to plaintiff after making the deductions indicated.

Thereafter plaintiff offered in evidence inspection certificates of the grapes involved and certain Department of Agriculture reports covering a certain period for the claimed purpose of showing that the market prices of grapes, on the days indicated, were above $2.10 per lug f.o.b. Objections to the offer were sustained. These exhibits were marked for identification but were not brought to this court to examine and accordingly their contents are not otherwise known. Thereafter plaintiff's attorney propounded a question to the witness as to whether or not a certain produce handler in San Francisco had offered $2.25 and $2.15 per lug, including storage charges, for these grapes on a certain day. Objection was sustained to the question. Plaintiff made an offer of proof as to what the witness would testify. It appears that previously counsel for plaintiff asked the same or a similar question of the witness in this respect and it was answered to the effect that someone, maybe Mr. Raymond, told him that a certain outfit had offered to buy grapes in storage from plaintiff around December 20th, but he did not believe anything was said then about them offering $2.25 and $2.15 per lug; that he did not think anything was said about storage charges; and that he had already committed himself to sell 2,210 lugs of these grapes at that time.

Thereupon plaintiff rested his case and the court granted defendants' motion for a nonsuit. apparently upon the ground that the record shows that plaintiff did in fact receive an accounting and accordingly an action for accounting will not lie and that plaintiff failed in his proof to show that PCFD owed him anything under the causes of action alleged in the complaint.

On appeal, plaintiff claims that the court erred in granting a nonsuit, in refusing to compel PCFD to account, in refusing to receive in evidence the documents indicated, and in refusing to permit plaintiff to offer evidence to prove PCFD did

not receive the highest market price for the grapes at the time they were sold.

As we construe plaintiff's argument on this appeal, he contends that the pleadings admit the execution of the agreement; that PCFD never gave to plaintiff any accounting; that it was agreed that the arbitration portion of the agreement "was out"; that it was shown by plaintiff's evidence that PCFD received $77,262.60 for the sale of the grapes; that there was only paid to plaintiff $36,256.78, and that under the agreement, as amended, PCFD had no authority to pay out any money to any other person without plaintiff's consent, and therefore PCFD must account for the balance; that the burden of proving any offset or charges by PCFD rested upon PCFD; that since PCFD failed accordingly to account properly to plaintiff for such expenditures, there is due and owing to him a balance of $41,005.82.

In support of this contention *Fox* v. *Hall,* 164 Cal. 287 [128 P. 749]; *Whann* v. *Doell,* 192 Cal. 680 [221 P. 899]; and *Kritzer* v. *Lancaster,* 96 Cal.App.2d 1 [214 P.2d 407], are cited. In the latter case it is said, at pages 7 and 8:

"The first count of the complaint was, in reality, a cause of action for an accounting. Under our system of pleading a cause of action for accounting need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff. . . . A pleader is not required to state facts which are peculiarly within the knowledge of his opponent. Here, the complaint alleged sufficiently the employment, the manner of compensation, the performance of services showing some compensation to be due, and the fact that the correct amount could not be ascertained without an accounting."

In *Fox* v. *Hall, supra,* it was said at page 290:

"The facts alleged and proved showed the existence of a fiduciary relation sufficient to invoke the jurisdiction of a court of equity to compel an accounting, which, as the evidence shows, had been demanded of the defendant. . . . Upon such accounting, the burden would probably be upon the said defendant to establish any expenditures or credits upon which he might rely as offsets to the gross income shown to have been received by him."

In *National Bank of New Zealand* v. *Finn,* 81 Cal.App. 317, 331 [253 P. 757], it was held that "The relation of principal and factor is of a fiduciary character and carries with it the elements of a trust, requiring the factor to

scrupulously account to his principal. . . . A factor is both a bailee and a sales agent and is bound by his contract with his principal.''

In *Estate of McCabe*, 87 Cal.App.2d 430 [197 P.2d 35], involving a confidential relationship of trustee and beneficiary, this court cited cases to the effect that trustees are under obligation to render to their beneficiaries a full account of all their dealings with the trust fund, and all presumptions will be against the trustee upon a settlement where there has been a refusal thus to account, and that the burden of proof was not on the beneficiary to point out the particulars in which the account was erroneous. (See also *Estate of McCabe*, 98 Cal.App.2d 503 [220 P.2d 614].) Sections 1261-1269, subd. (b), 1272.5, 1273, subd. (1) (b), and 1272 of the Agricultural Code are cited as supporting this general statement of the rule, and as indicative of the duty of a trustee to account adequately to the principal under the circumstances here related.

Section 1272 provides: ''The burden of proof shall be upon the commission merchant to prove the correctness of his accounting as to any transaction which may be questioned.''

 In the instant case the plaintiff established the fiduciary relationship; that the grapes were sold for $77,262.60; and that only $36,256.78 was returned to him. Under the agreement PCFD was only entitled to certain specified offsets and compensation for their sale. This was a sufficient prima facie showing by plaintiff of a right to accounting by PCFD for the balance. Under the authorities cited the duty rested upon PCFD to justify the retention or misapplication of any amount of the money not authorized by plaintiff. The question then arises: did the evidence of plaintiff conclusively show that PCFD met that burden before the nonsuit was granted in order to justify the judgment rendered? Notwithstanding the pleadings, the evidence does indicate that plaintiff did receive some form of accounting from Independent Growers, Inc., prior to the commencement of this action, but plaintiff contended then that it was not a full and complete report and accordingly ''questioned'' its efficiency and authenticity. The only other report indicated was that produced by PCFD while its president T. R. Sunshine was testifying as a witness under section 2055 of the Code

of Civil Procedure. This accounting sheet was not received in evidence and accordingly is not before us for consideration, but certain testimony was elicited from the witness indicating its contents which, if true, would indicate that PCFD owed nothing to plaintiff under the disbursements made by PCFD. It is apparently plaintiff's claim that PCFD therein charged as an offset money PCFD paid to Independent Growers, Inc., which was the disputed indebtedness, without plaintiff's consent; that PCFD violated the agreement and sold portions of the grapes at a lesser amount than the "maximum that could be secured under market conditions," as provided in the contract; whether Independent Growers, Inc., was entitled to 10 cents per package selling charge; whether unclassified grapes were packed; and failure to credit plaintiff with cull grapes sent to the winery.

■ The effect of the testimony of a witness called under section 2055 of the Code of Civil Procedure is that the party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him by other evidence. ■ It is true that plaintiff's counsel failed to call plaintiff as a witness to rebut this testimony, but for the purpose of the nonsuit, plaintiff was not bound by his testimony that he made a full and accurate accounting of the proceeds of the sale and according to plaintiff's instructions. Accordingly, the duty of PCFD to account for those proceeds rested upon PCFD, particularly where it was alleged and shown that only PCFD had a record of the transactions and failed fully to account for the proceeds. Whether plaintiff accepted the $21,000 check as a waiver of all disputed claims was a matter of defense. A nonsuit was not authorized under the circumstances. (*Grantham* v. *Ordway*, 40 Cal.App. 758, 761 [182 P. 73]; *Estate of Anderson*, 185 Cal. 700, 704 [198 P. 407].)

■ It is a well known rule that a court may grant a nonsuit only when, disregarding the conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legal inference that may be drawn from the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict was given. ■ It is likewise established law that whenever, under a given set of facts a presumption arises, such presumption is itself evidence. (*Grantham* v. *Ordway*, *supra*; *Brea*

v. *McGlashan*, 3 Cal.App.2d 454 [39 P.2d 877]; 1 Cal.Jur. 2d p. 429, § 91.)

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 16, 1955, and respondent's petition for a hearing by the Supreme Court was denied July 13, 1955.